645 So.2d 1144 (1994)
STATE of Louisiana
v.
Joseph LOUIS.
No. 94-K-0761.
Supreme Court of Louisiana.
November 30, 1994.
*1145 Eugene P. Cicardo, Jr., Alexandria, for defendant.
Richard P. Ieyoub, Atty. Gen., Charles F. Wagner, Dist. Atty., Thomas M. Yeager, Kathrine S. Williamson, Alexandria, for respondent.
LEMMON, Justice[*].
This case comes before the court on writ of certiorari granted to review the ruling of the trial court which denied defendant's motion to quash the indictment for possession of over 400 grams of cocaine and to enforce an agreement by the prosecutor to forego prosecution of defendant in exchange for defendant's cooperation in identifying and obtaining evidence against his drug source. The principal issues are whether defendant's attorney and the prosecutor reached an agreement and whether defendant performed in accordance with the agreement so as to entitle him to immunity from prosecution for the particular offense.
Facts
On March 28, 1991, Michael Austin came out of a bus station in Alexandria and entered a car driven by defendant. When police officers approached Austin, he stepped out of the car, dropping a tote bag onto the ground. A narcotics dog signaled the presence of drugs in the bag, but Austin refused a request for consent to search. The officers subsequently searched the bag pursuant to a warrant and found 1.69 pounds of cocaine. Austin was arrested and charged with possession of cocaine, although he claimed the bag belonged to defendant. The officers interrogated defendant, but filed no charges against him at the time.
Shortly thereafter, defendant's attorney approached an assistant district attorney about the possibility of working out an agreement to dismiss the charges against Austin and to refrain from prosecuting defendant in exchange for defendant's information about drug sources in Houston, Texas. Although numerous additional meetings followed and defendant tendered some information to law enforcement agents, the prosecutor eventually refused to grant defendant immunity and obtained a grand jury indictment against defendant.
Defendant filed a motion to quash the indictment, based on the agreement with the prosecutor and his performance under the agreement. Both sides presented evidence at the hearing on the motion.
The trial court denied the motion, finding that although there were preliminary steps toward an agreement, "there was never an agreement consummated." While the court found that the prosecutor promised immunity for defendant on these charges if the Drug Enforcement Administration (DEA) accepted defendant to work with the agency in Houston and if defendant did in fact cooperate with the DEA, the judge concluded there was no evidence that defendant cooperated with the DEA or did anything to his detriment. *1146 Defendant then entered a guilty plea, reserving his right under State v. Crosby, 338 So.2d 584 (La.1976) to appeal the denial of his motion.
The court of appeal affirmed the conviction and sentence. 634 So.2d 1237. The court held that the parties reached the preliminary agreement found by the trial court and that the evidence established the DEA was willing to work with defendant, but there was no evidence that defendant fulfilled his obligations under the agreement or that he relied to his detriment on the prosecutor's representations. This court granted defendant's application for certiorari. 640 So.2d 1320.

Evidence on Motion
At the hearing on the motion, the prosecutor testified that he conducted discussions with defense counsel, beginning in June of 1991, concerning the dismissal of the charges against Austin and defendant in exchange for defendant's revealing his drug source in Houston to the DEA and assisting in obtaining evidence against the source. The prosecutor, who testified that he was always interested in pursuing drug offenders higher up in the chain of distribution, agreed that he would grant defendant immunity from prosecution for the March 1991 incident if the DEA accepted defendant to work with the agency and if defendant in fact cooperated with the DEA. The prosecutor informed the defense attorney that defendant would have to be interviewed by a DEA agent in Houston in order to determine whether his information and assistance would be useful and of interest to that agency. Defendant then spoke to the DEA agent, provided him with the name of his drug source, and agreed to participate in sales and other activities which the DEA desired.[1] The DEA agent then called the prosecutor, stating that the agency was interested in working with defendant because the person defendant identified as his source was a "big seller of cocaine." The prosecutor then informed defense counsel that the DEA required a document, signed by a judge and by defendant's probation officer,[2] authorizing defendant to go to Texas and to handle drugs while working with the DEA. The prosecutor further agreed to prepare the document and obtain the signatures.
Shortly after the prosecutor prepared the document, he received information that defendant was continuing to transport drugs from Texas to Alexandria. For several weeks, defense counsel repeatedly requested the document so that defendant could fulfill his obligation to provide assistance to the DEA in Houston, but the prosecutor put him off. The prosecutor finally told defense counsel in September of 1991 that he had no intention of completing the agreement, having decided not to deal with defendant because of his information that defendant was still engaging in narcotics traffic.[3]
On the issue of whether the parties ever reached an agreement, the prosecutor asserted that he told defense counsel there was no deal until it was reduced to writing, but explained "I didn't say there was not a deal until it was reduced to writing, but I told him how the deal was going to be done in writing." The prosecutor also claimed that he told defense counsel, several weeks after the DEA agent expressed an interest in using defendant as an informant, that the agreement would be conditioned on defendant's not engaging in other criminal activities. The prosecutor did not keep notes of his meetings and conversations with defense counsel.
Finally, as to the general procedure in agreements not to prosecute, the prosecutor testified that when an accused offers to reveal information or provide assistance in exchange for a promise not to prosecute, his *1147 first step is to verify that the information is useful to the police. After the police meet with the accused and express an interest in working with the accused as an informant, the prosecutor meets with the accused and the police and reduces the details of the agreement to writing so that there will be no misunderstanding on anyone's part as to the reciprocal obligations.[4]
Defense counsel testified that he approached the prosecutor in June of 1991 regarding a possible "deal" for Austin and defendant. They discussed the possibility of defendant's acting as an informant for the DEA in Houston. After several conversations, the prosecutor requested that defendant reveal the name of his supplier. The prosecutor stated that if the DEA were interested in the named supplier and in defendant's working with the agency to develop evidence against the supplier, and if defendant did so, the state in return would dismiss the pending charges against Austin and grant defendant immunity from prosecution for the March 1991 incident.[5] Defendant thereafter provided the prosecutor with the name of his drug source.
A few days later, the prosecutor advised defense counsel that the DEA was interested in the named person and instructed him to contact the DEA agent. After several conversations with the agent, defense counsel set up a meeting between defendant and the agent at defense counsel's office on August 1, 1991. At the meeting, defendant provided names, dates and places of the Houston drug dealer's activities, and he told the agent what he could do to help the DEA obtain evidence against the dealer. At the agent's request, defendant accompanied the agent to Houston to verify the information that he provided.
Approximately one week later, the prosecutor informed defense counsel that the DEA agent was interested in working with defendant and that the "deal would go through" that is, defendant would work with the DEA in exchange for the state's agreement not to pursue charges against defendant. However, the DEA agent required a document releasing defendant from probation so that he could work with the DEA by handling drugs and dealing with drug suppliers. The prosecutor agreed to obtain the release, and further suggested that defendant be required to agree not to return to Louisiana. In defense counsel's words, "the ball was back in the park of the district attorney's office simply for a release letter."
During the next several weeks, defense counsel made numerous requests for the document authorizing defendant to work with the DEA in Texas, but each time the prosecutor put him off. Finally, in mid-September, the prosecutor informed defense counsel that the deal was off.[6]
According to defense counsel, defendant had done as much as he could to fulfill his obligations under the agreement, but could go no further without the required document releasing him from probation. He also asserted that he has dealt with this prosecutor in the past without reducing the agreements to writing, and that the prosecutor made no demand for a writing in this case as a prerequisite to the validity of the agreement. He stated he relied on the prosecutor's verbal representations when he advised his client to give incriminating information. He further denied that the prosecutor made defendant's freedom from criminal activity a condition of the agreement.
An expert in Louisiana obligations law testified that a verbal contract not to prosecute is binding on the parties; that a new term (such as refraining from criminal activity) cannot be imposed after an agreement has been reached, and that refraining from criminal activity was not an implied condition of the contract in this case because defendant could have been prosecuted for any crimes *1148 committed after the parties reached the agreement; and that if the DEA had refused to work with defendant, the contract would have been void because of a subsequent event which made performance impossible, but that if the prosecutor's failure to cooperate prevented defendant from performing his obligation, then the obligation should be regarded as performed because the situation would be the same as when the opposing party prevents the happening of a condition.

Decision and Reasoning
In determining the validity of agreements not to prosecute or of plea agreements, the courts generally refer to rules of contract law. State v. Nall, 379 So.2d 731 (La.1980); State v. Lewis, 539 So.2d 1199 (La.1989). Contractual principles may be helpful by analogy in deciding disputes involving plea agreements. Ricketts v. Adamson, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987); Cf. Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). However, the criminal defendant's constitutional right to fairness may be broader than his or her rights under contract laws. State v. Nall, 379 So.2d at 734 (Dennis, J., concurring). Moreover, commercial contract law can do no more than to serve as an analogy or point of departure, since "plea agreements are constitutional contracts." Ricketts v. Adamson, 483 U.S. at 16, 107 S.Ct. at 2689. The Court further stated in Ricketts:
The values that underlie commercial contract law, and that govern the relations between economic actors, are not coextensive with those that underlie the due Process Clause, and that govern relations between criminal defendants and the State. Unlike some commercial contracts, plea agreements must be construed in light of the rights and obligations created by the Constitution.
483 U.S. at 16, 107 S.Ct. at 2689.
In State v. Nall, 379 So.2d 731 (La.1980), the prosecutor agreed to reduce a murder charge to manslaughter with a ten-year sentence in exchange for Nall's promise to testify against a companion in accordance with Nall's statement that his companion shot the victim during a residential burglary. After this agreement was reached, Nall gave an entirely different statement, asserting that he hired the companion to assist in murdering the victim because of Nall's romantic involvement with the victim's wife, and that he fired the first shot. This court held that when Nall's statement which prompted the agreement turned out to be false, the agreement fell because of failure of cause. The decision further noted that the agreement did not involve a bargain for immunity which is frequently troublesome because of the bargain's forced infringement on the right against self-incrimination.[7] Implicit in the court's decision was the consideration that the prosecutor's denial of immunity under the circumstances, irrespective of contract principles, did not violate any concepts of fundamental fairness.
In State v. Lewis, 539 So.2d 1199 (La. 1989), the defendant entered into a written agreement with the district attorney of Rapides Parish and others in a complex factual situation involving separate state charges in several parishes as well as federal charges. The defendant's efforts led to the recovery of several tractors stolen from Rapides Parish valued in excess of $125,000, and he admitted participation in and gave information about several other crimes. However, when he denied responsibility for the arson of his former girlfriend's vehicle, the state concluded he had breached his plea bargain, and several prosecutions went forward. This court noted that the defendant enjoyed "equitable immunity" as to the prosecution in Rapides Parish. As to the prosecutions in other parishes, this court held that the contract failed because both parties believed they bargained for something other than what they were actually to get; however, on the basis of constitutional fundamental fairness, this court barred use of the incriminating statements in those prosecutions because the statements were given under the reasonable belief that they would not be used against him.
*1149 In State v. Tanner, 425 So.2d 760 (La. 1983), the prosecutor and defense counsel reached an agreement whereby the prosecutor agreed to dismiss the prosecution of the defendant on two counts of negligent homicide arising out of an automobile accident if the defendant and his witness testified before the grand jury and the grand jury returned a no true bill. Waiving his privilege against self-incrimination without receiving immunity from use of the testimony, the defendant and the witness testified, and the grand jury issued a no true bill. However, the prosecutor did not dismiss the information, stating that he did not remember making an express promise to do so while admitting that defense counsel could logically have concluded that the charges would be dismissed in the event of a favorable conclusion to the proceeding.
This court held that the prosecutor had entered into an agreement binding upon the state which could not be repudiated after the defendant, in reliance on the agreement, relinquished such a fundamental right as the privilege against self-incrimination. In effect, the decision turned on the defendant's constitutional right to fundamental fairness irrespective of his commercial contract rights.
In the present case, we refer first to the law of contracts for application by analogy in determining whether a contract was formed. A contract is formed by the consent of the parties established through offer and acceptance. La.Civ.Code art. 1927. The offer and acceptance may be verbal unless the law prescribes a requirement of writing. Id.; Laroussini v. Werlein, 52 La.Ann. 424, 27 So. 89 (1900). Once there is an offer and acceptance, the agreement is subject to specific performance. La.Civ.Code art. 1986. The party demanding performance of a contract has the burden of proving its existence. Phillips v. Insilco Sports Network, Inc., 429 So.2d 447 (La.App.4th Cir.1983). Moreover, the obligation may be dependent upon an uncertain event. La.Civ.Code art. 1767. A lawful cause is also necessary to the existence of a contract. La.Civ.Code art. 1966. The cause is the reason why a party obligates himself. La.Civ.Code art. 1967.
Here, defense counsel offered defendant's promise to supply information about drug sources and cooperation with drug enforcement agents in exchange for the prosecutor's promise not to prosecute defendant for the March 1991 incident. The prosecutor's accepted the offer, conditioning the acceptance upon (1) the DEA's determination that defendant could supply information about a drug source and assistance that the DEA considered beneficial, and (2) defendant's actually providing the information and assistance.[8] No formal writing was required, either by law or by either party as a prerequisite to the validity of his consent.[9] Therefore, the prosecutor's own testimony established by a preponderance of the evidence that the parties exchanged promises and thereby formed a contract by consent, conditioned on the DEA's approval.[10]
The contract, after the offer and acceptance, was not enforceable until the occurrence of the uncertain event which was a suspensive condition of the contract, namely the determination by the DEA that defendant's information and assistance was useful and beneficial. See La.Civ.Code art. 1767. Defendant met in good faith with the DEA agent and incriminated himself by revealing names, dates and places of the supplier's activities and stating how he could assist the DEA in obtaining evidence. The DEA agent then notified the prosecutor that the agency desired defendant's information and assistance, *1150 and wanted him to work with the agency in developing evidence against the named drug supplier. The agent requested the document authorizing defendant's release from probation, and the prosecutor agreed to obtain the document, in effect acknowledging the existence of an agreement and the fulfillment of the suspensive condition. Under contract law, each party was bound to complete performance of the reciprocal obligations.
Considerations of constitutional fairness generally come into play after the formation of an agreement not to prosecute, and generally involve the performance of the defendant's obligations under the agreement. In the present case, it is undisputed that defendant did not completely perform his obligations under the agreement. The central issue is whether defendant's failure to perform completely bars his right to enforce the agreement.
After the agreement was formed, the prosecutor attempted to repudiate the contract when he was informed of defendant's continuing illegal drug operations. Yet there was no evidence that the parties agreed, at the time of the formation of the contract, to a requirement for defendant to refrain from criminal conduct as a cause of the contract. Nor did the parties agree at the time that defendant's engaging in criminal conduct would be a resolutory condition. On this record, the prosecutor did not attempt to impose such a requirement until long after both parties had given their consent to the contract, and such a requirement under contract law would be a new contract or a modification of the original contract, either of which would require that both parties consent anew. Furthermore, as the expert pointed out, the requirement could not be viewed under contract law as implied in the contract because the state was free, irrespective of the contract, to prosecute defendant for any criminal conduct after the formation of the contract.[11]
The prosecutor contends, however, that defendant's continuing involvement in illegal drug activities was inconsistent with his obligation under the agreement to cooperate with the government. Perhaps defendant's personal transporting of illegal drugs after the formation of the agreement could have constituted a breach of his general obligations under the agreement and extinguished the prosecutor's obligation to perform, but we need not address that issue because the prosecutor presented no evidence of continuing criminal activity to support his argument of a breach.[12]
The record establishes that defendant stood ready and willing to complete the performance of his contractual obligations by working cooperatively with the DEA in obtaining evidence against his drug source, but the other contracting party prevented that performance by failing to obtain the release from probation required by the DEA. The DEA also stood ready and willing to accept defendant's performance. Moreover, defendant incriminated himself by giving information about his involvement in large scale drug dealings. Under such circumstances, contract law regards the obligation as fulfilled. La.Civ.Code art. 1772. Additionally, constitutional principles dictate that when the prosecutor in a criminal case himself causes the non-occurrence of the condition which would give rise to his obligation not to prosecute, the obligation becomes absolute. See United States v. San Pedro, 781 F.Supp. 761 (S.D.Fla.1991); Jay M. Zitter, Annotation, Enforceability of Agreement By Law Enforcement Officials Not To Prosecute. If Accused Would Help In Criminal Investigation Or Would Become Witness Against Others, 32 A.L.R. 4th 990 (1984).
This case, therefore, is different from the Nall case in at least three respects. First, *1151 this case does involve an immunity agreement in which the defendant relinquished his right against self-incrimination and provided inculpatory statements about drug activities unrelated to the March 1991 cocaine possession. Second, the defendant in Nall, after the agreement based on a forthcoming statement mitigating his own culpability and implicating his companion, gave a statement which implicated himself and had little value to the prosecutor in establishing the companion's culpability in the crime. On the contrary, the defendant in this case gave the DEA the information expected of him and stood ready and willing to assist the DEA in obtaining evidence against the drug source, which assistance the DEA stood ready and willing to accept until the prosecutor attempted to withdraw from the agreement. Third, unlike the Nall case, there was no justification in this record for the prosecutor to refuse to complete the agreement himself or to refuse to allow defendant to fulfill his obligation.
Finally, there are no other constitutional considerations in this case which would apply to broaden the scope of contract law. Indeed, because of defendant's relinquishment of his right against self-incrimination, any constitutional considerations flow in favor of immunity from prosecution.
Accordingly, the judgment of the court of appeal is set aside, and the motion to quash the indictment is granted.
NOTES
[*] Judge William Norris, III, Court of Appeal, Second Circuit, sitting by assignment in place of Justice James L. Dennis; Judge Felicia Toney Williams, Court of Appeal, Second Circuit, participating as Associate Justice Pro Tempore, effective September 1, 1994.

Hall, J., not on panel. Rule IV, Part 2, § 3.
[1] The DEA agent did not testify at the hearing, but this information was developed in the assistant district attorney's testimony.
[2] Defendant was on probation for an earlier conviction of distribution of marijuana.
[3] Referring to this information, the prosecutor stated, "That's why I terminated my agreement with [defendant]."

The prosecutor had told the DEA agent earlier that he did not want to go through with the deal because of the information that defendant was still transporting cocaine. The DEA agent responded that this decision was one for the prosecutor to make, but the prosecutor admitted that the agent never retreated from his position that the agency wanted to use defendant as an informant.
[4] The prosecutor testified that this procedure had been utilized by the Rapides Parish District Attorney's office since the beginning of 1990, because of prior disputes over verbal agreements.
[5] Defendant had not yet been indicted or charged for that incident.
[6] The prosecutor testified that he did not tell defense counsel earlier of his decision not to complete the deal based on defendant's continuing drug activity, since he did not want to reveal his knowledge of the cocaine transporting.
[7] Nevertheless, the court, while allowing the prosecution to go forward, affirmed the trial judge's ruling that suppressed as involuntary Nall's inculpatory statement made after the parties reached the agreement.
[8] The second "condition" was not really a condition. Defendant became obligated to perform upon offer, acceptance and fulfillment of the first condition. If defendant failed to perform, that would constitute a breach of the contract.
[9] The evidence, viewed in the light most favorable to the prosecution, showed that the prosecutor ultimately intended to reduce the agreement to writing. But there was no evidence of any requirement of a writing before the party would be bound under the contract. See Laroussini v. Werlein, 52 La.Ann. 424, 27 So. 89 (1900).
[10] This was not a case in which the prosecutor made an offer which defendant could accept by performance, as essentially held by the lower courts. Rather the prosecutor and defense counsel made mutual promises, thereby forming an enforceable contract, although the prosecutor's obligation was conditional.
[11] If defendant was engaging in drug distribution, the prosecutor could have charged him with that offense; and if an arrest and incarceration for that offense had caused defendant to be unable to provide assistance to the DEA, then the agreement would have fallen because a subsequent event made performance impossible.
[12] For example, continuation of activities or communications with confederates may have been necessary in order for defendant's cooperation with DEA to be effective, but the record contains no evidence of continuing drug activity or the reason therefor.