674 So.2d 265 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Michael BIAS, Defendant-Appellant.
No. CR95-541.
Court of Appeal of Louisiana, Third Circuit.
January 31, 1996.
Rehearing Denied June 7, 1996.
*266 Robert Richard Bryant Jr., Paul Peter Reggie, Lake Charles, for State.
Michael Bias, pro se.
Before DOUCET, C.J., and KNOLL and DECUIR, JJ.
KNOLL, Judge.
In this criminal case, a six-person jury convicted defendant, Michael Bias, of the crime of simple robbery, a violation of La. R.S. 14:65. After this conviction, defendant, a second-felony offender, was adjudicated a habitual offender and sentenced to serve 12 years at hard labor. Defendant appeals his conviction and sentence, relying on 7 assignments of error. We affirm.

FACTS
The facts of this case center on a robbery which occurred on December 4, 1992, at Abe's Grocery Store in Lake Charles, Louisiana. On that date, Clifford Vanslyke, *267 cashed the check at a local bank, placed the money in nondescript bags, and returned to Abe's Grocery with the money in the trunk of his automobile. When Vanslyke was walking from his automobile to the store, two men attacked him in the parking lot, grabbed the bags of money, and fled. Attempts by the butcher and the security guard at Abe's Grocery to apprehend the robbers were unsuccessful. The Lake Charles Police Department was then called to investigate the robbery.
The police investigation revealed that three men were involved in the robbery: Ernest Mack, Michael Lemelle, and the defendant. The three men were arrested and charged with simple robbery. The money taken in the robbery was never recovered. Ernest Mack and the defendant were tried in the same proceeding. Mack's conviction was affirmed on appeal. The record does not show the disposition of the robbery charge against Lemelle.

JUROR BIAS
The defendant first contends that Francis Louviere, one of the jurors, should have been excluded because of potential bias. The defendant argues that Louviere had been an employee at Abe's Grocery and was a friend of the grocery owner.
From the outset, we note that the defendant's appreciation of the facts is incorrect. The record shows that after the trial began, Louviere advised the trial court that she recognized a person sitting in the courtroom. The person Louviere identified was Barbara Conner. Conner was shopping at Abe's Grocery at the time of the robbery, but she did not witness the crime.
In a transcribed in camera interview with the trial court, the record shows that Louviere and Conner were classmates in the third or fourth grade. The two were not close friends and had not maintained contact through the years. Conner was a former employee of Abe's Grocery. While Conner was employed at Abe's Grocery, she saw Louviere and occasionally they talked when she shopped. Conner had last seen Louviere six years before. At the close of the trial court's in camera interview, counsel for the defendant withdrew her objection to Louviere's continued presence on the jury.
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence. La.Code Crim.P. art. 841; State v. Ratcliff, 416 So.2d 528 (La.1982). The purpose of the contemporaneous objection rule is to allow the trial court the opportunity to rule on the objection and thereby prevent or cure an error. State v. Herrod, 412 So.2d 564 (La.1982). The record in the case sub judice indicates that counsel for defendant withdrew her objection to Louviere's presence on the jury and indicates that defense counsel was satisfied with the trial court's ruling. Thus, we find that the defendant's assignment of error has not been preserved for appellate review.

CHALLENGE FOR CAUSE
The defendant next contends that the trial court should have excused a male juror for cause. Although the defendant does not identify the juror in question, he argues that the juror indicated that he could not find the defendant free from guilt if the defendant chose not to testify in his own behalf.
The party making the motion for appeal shall, at the time the motion is made, request the transcript of that portion of the proceedings necessary, in light of the assignment of errors urged. La.Code Crim.P. art. 914.1(A). In the present case, the defendant failed to include voir dire examination as part of the appellate record. Moreover, defendant has sketched very few facts in his brief, regarding this assignment of error and has failed to cite legal authority to support his assignment of error. Since we have no transcript of this portion of the trial, we are unable to review defendant's assignment of error.

TESTIMONY OF RHONDA GARRETT
The defendant next contends that Rhonda Garrett was motivated by reward money and the threat of criminal prosecution when she testified that he was one of the robbers. Garrett testified that the defendant was near the crime scene at the approximate time of the robbery.
*268 We premise our treatment of this issue by pointing out that witness credibility forms the crux of defendant's assignment of error. In essence, the defendant contends that Rhonda Garrett's testimony was not worthy of belief.
It is well settled that a determination of the weight of evidence is a question of fact. The resolution of a matter where conflicting testimony exists requires a determination of the witness's credibility and is a matter of the weight of the evidence. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Dugar, 93-718 (La.App. 3 Cir. 10/5/94); 643 So.2d 870. A determination of the credibility of a witness rests solely with the trier of fact who may accept or reject it, in whole or in part. State v. Tassin, 472 So.2d 340 (La.App. 3 Cir.), writ denied, 477 So.2d 97 (La.1985). Where rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all evidence most favorable to the prosecution must be adopted on appellate review. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Only irrational decisions of the trier of fact to convict will be overturned on appellate review. State v. Mussall, 523 So.2d 1305 (La. 1988).
In the present case, we note that the record shows that all of the sources of potential bias that may have affected Rhonda Garrett's testimony were presented to the jury and were available in its assessment of her testimony. Garrett told the jury that she spoke with Johnny Abraham of Abe's Grocery. Abraham told her that the stolen money had not been found and that a reward would be forthcoming if the robbery suspects were apprehended. Garrett stated that she was reluctant to go to the police because she thought that this robbery was none of her business. She further said that she was not lying, and that she would not fabricate a story because the police pressed her to find out what she knew.
After carefully reviewing the evidence, we find that the question of Garrett's credibility was a fact question determinable by the jury. Moreover, after considering defendant's argument, we find that he failed to show that the jury determination of this issue adverse to him was irrational. Therefore, we find that this assignment of error lacks merit.

REFERENCE TO DEFENDANT'S CRIMINAL RECORD
The defendant next contends that the trial court erred in allowing Michael Lemelle, one of the robbers arrested with him, to tell the jury that defendant had a prior criminal record. The defendant states in brief that Lemelle told the jury that he knew the defendant from "doing time" with him in the prison system.
As was the instance earlier in this opinion, we do not find that the defendant has correctly recounted the facts that appear in the record. Contrary to the defendant's assertion, Lemelle stated that he knew Earnest Mack, not the defendant, from when they were in prison together. Testifying further, Lemelle stated that he knew the defendant from reform school and from the streets. Defense counsel's objection to Lemelle's reference to reform school was sustained. No further reference was made to the defendant's presence in reform school and the jury was never told that defendant had been in prison.
In analyzing this assignment of error, we first note that we are not presented with the mandatory mistrial provisions of La.Code Crim.P. art. 770, since the remark was not made by the trial court or officers of the court. Likewise, we further observe that the defendant neither moved for a mistrial nor asked the trial court to admonish the jury when Lemelle referred to the fact that the defendant had been in reform school at one time.
Furthermore, even if the defendant had requested a mistrial, under La.Code Crim.P. art. 771 it is within the discretion of the trial court to grant a mistrial if it is satisfied that an admonition is insufficient and defendant will be deprived of a fair trial. In the present case, we do not find that a mistrial was warranted. The defendant's objection to Lemelle's limited reference to reform school was immediately sustained and no facts relating to reform school were developed. Accordingly, *269 we do not find that the defendant was substantially prejudiced by Lemelle's statement. Therefore, we find no merit to defendant's assignment of error.

BREACH OF THE SENTENCING AGREEMENT
The defendant contends that the State breached its written agreement to recommend a five-year sentence. The State argues that it did not fulfill the sentencing agreement because the defendant failed to comply with the conditions outlined in the contract.
Recently, in State v. Louis, 94-0761 (La.11/30/94); 645 So.2d 1144, the Louisiana Supreme Court summarized the applicable law as follows:
In determining the validity of agreements not to prosecute or of plea agreements, the courts generally refer to rules of contract law. Contractual principles may be helpful by analogy in deciding disputes involving plea agreements. However, the criminal defendant's constitutional right to fairness may be broader than his or her rights under contract laws. Moreover, commercial contract law can do no more than to serve as an analogy or point of departure, since "plea agreements are constitutional contracts."
The Court further stated in Ricketts v. Adamson, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987):
The values that underlie commercial contract law, and that govern the relations between economic actors, are not coextensive with those that underlie the due Process Clause, and that govern relations between criminal defendants and the State. Unlike some commercial contracts, plea agreements must be construed in light of the rights and obligations created by the Constitution. 483 U.S. at 16, 107 S.Ct. at 2689.
* * * * * *
[W]e refer first to the law of contracts for application by analogy in determining whether a contract was formed. A contract is formed by the consent of the parties established through offer and acceptance. The offer and acceptance may be verbal unless the law prescribes a requirement of writing. Once there is an offer and acceptance, the agreement is subject to specific performance. The party demanding performance of a contract has the burden of proving its existence. Moreover, the obligation may be dependent upon an uncertain event. A lawful cause is also necessary to the existence of a contract. The cause is the reason why a party obligates himself.
Louis, 645 So.2d at 1148-1149. (Citations omitted).
After defendant's jury conviction, the defendant and the State entered into negotiations concerning his upcoming sentencing. The culmination of these negotiations was a written contract in which the State agreed to recommend a five-year sentence. For his part of the bargain, the defendant agreed to fulfill five certain conditions: (1) give his full knowledge of all persons who participated in the robbery of Abe's Grocery; (2) give a sworn written statement of his complete knowledge of the robbery; (3) divulge the whereabouts of approximately $30,000 gained in the robbery; (4) submit to and pass a polygraph examination concerning the other information; (5) testify truthfully in any and all judicial proceedings if called upon by the State to do so.
In the present case, the record shows that the defendant was uncooperative, particularly with regard to the polygraph examination, the lynchpin of the agreement. Initially, the record establishes that the defendant refused to leave his cell when his parole officer, Frank Beason, tried to arrange a polygraph test. The record further shows that when the State arranged a polygraph test, the examiner emphatically instructed that it was essential that the defendant remain still during the polygraphic examination. Despite this and repeated precautionary instructions during the examination, the record shows that the defendant squirmed continually, thereby rendering inaccurate test results. Ultimately, the defendant informed the polygraph examiner that he could not trust any "white boy," and he began cursing as he *270 forcibly disconnected the polygraph sensors from his body.
After thoroughly reviewing the record, we find that the importance of the State's inclusion of the successful completion of the polygraph test is further highlighted by the defendant's other actions. The defendant first told Beason, his parole officer, of two locations where the missing robbery money could be found, and further stated that there were three other robbery participants. However, when the defendant spoke to the police department shortly thereafter on December 2, 1994, his story was changed. In this latter meeting, the defendant asserted that only Mack and Lemelle were involved in the robbery and he only divulged one possible location for the money.
After carefully examining these facts, we do not find that the State was bound to the sentence agreement. Clearly, defendant voided the sentencing agreement through his own belligerence. Certainly, now he cannot claim that the State prejudiced him by failing to abide by the sentencing agreement. Any prejudice the defendant suffered was the result of his own actions. Therefore, we find that there is no merit to the defendant's assignment of error.

DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL
The defendant next contends that the trial court erred by denying him the effective assistance of counsel during the time he was negotiating his sentence agreement. The State counters, stating that the defendant waived his right to have counsel participate and chose to proceed pro se.
We have carefully examined the record of these proceedings in light of defendant's assignment of error and find no merit to the defendant's contention. Our determination of this issue is heavily dependent upon our appreciation of the chronology of events that transpired in the trial court. Accordingly, we will set forth those facts in order to establish the basis for our determination.
The record shows that the defendant was represented by court-appointed counsel at the trial of the simple robbery charge brought against him. It further shows that after being convicted by the jury of simple robbery, the defendant initiated conversations with his parole officer, Beason, in which he indicated that he wished to negotiate with the State to have it recommend a lesser sentence in exchange for his cooperation in various ways. Despite being advised by Beason and the State to seek advice of counsel in this matter, the defendant insisted on proceeding pro se in this aspect of the case. Ultimately, a written agreement, outlined hereinabove, was negotiated on October 14, 1994. In the written agreement, the defendant specifically stated, "[A]t the insistence of Michael Bias, Bias enters into this agreement without the knowledge or counsel of his attorney, Ms. Saundra Isaac."
Defense counsel indicated at defendant's sentencing as a habitual offender on November 21, 1994, that she was unaware of defendant's negotiation with the State regarding any agreement about sentencing recommendations. Because of this lack of knowledge on counsel's part and the defendant's adamant assertions to the trial court that he wanted to abide by the sentencing recommendation agreement, the trial court postponed sentencing of the defendant and allowed him ten additional days within which to fulfill his obligations under the earlier negotiated sentencing recommendation agreement.
The record next shows that the trial court held a hearing on February 17, 1995, to determine whether the defendant complied with his obligations outlined in the sentencing recommendation agreement he had with the State. At this hearing, evidence was adduced which showed that in all proceedings held after November 21, 1994, defense counsel actively participated in the meetings held with defendant. In particular, the record affirmatively establishes that defense counsel was in attendance when defendant presented himself on February 10, 1995, for his polygraph examination. Despite defense counsel's active participation in this examination and her exhortations to the defendant to comply with the polygraph examiner's directions, the defendant terminated his polygraph examination. After adducing evidence *271 from various witnesses, the trial court determined that the defendant failed to abide by his written agreement regarding the State's recommendation of sentence and sentenced him as if no recommendation of sentence had been made. We agree with the sentencing court that the defendant's own actions vitiated the sentencing recommendation agreement. The defendant cannot now be heard to complain.
Furthermore, although it appears that the State chose to directly deal with the defendant in the negotiation of a sentencing recommendation agreement after being advised that the defendant did not want to involve defense counsel, it is clear that through the foresight of the trial court defense counsel ultimately participated as an advocate and counselor to the defendant in the sentencing phase. The record is clear that the defendant asserted at his November 21st hearing in the presence of his court-appointed attorney that he wanted to cooperate with the State as he indicated in the sentencing recommendation agreement of October 14th. Thus, we find that the defendant ratified his earlier uncounseled agreement. Because the defendant chose to proceed under the sentencing recommendation agreement and defense counsel was a participant with the defendant in all proceedings after November 21, 1994, we are not faced with the more difficult questions presented by pronouncements in State v. Hattaway, 621 So.2d 796 (La.1993), regarding the State's direct communications with the defendant after the appointment of counsel.[1] Accordingly, we find that defendant's ratification of his uncounseled agreement and the active participation of defense counsel in the State's contacts with the defendant after November 21st cured any problem that may have occurred.
Therefore, we find no merit to the defendant's assignment of error.

ENHANCEMENT OF DEFENDANT'S SENTENCE
The defendant next contends that the sentencing court enhanced his sentence because he failed to cooperate with the State in implicating other individuals in the robbery of Abe's Grocery.
Our careful review of the record shows that the trial court, after conducting a full evidentiary hearing, found that the defendant was a second habitual offender as delineated in La.R.S. 15:529.1. Based on the maximum seven year sentence provided for a simple robbery conviction, the sentencing court determined that the defendant was subject to a potential sentence of three and one-half to fourteen years under La.R.S. 15:529.1(A)(1). Based upon these statutory provisions, the sentencing court ordered that defendant serve a twelve year sentence, the same sentence it imposed on Mack, one of the other robbers of Abe's Grocery. There is nothing in the record that hints that the sentencing court was punishing the defendant for exercising his right to a jury trial or for failing to implicate other individuals in the robbery of Abe's Grocery.
Therefore, we find no merit to the defendant's assignment of error.

DEFENDANT'S SUPPLEMENTAL BRIEF
In a supplemental brief, the defendant attempts to argue that it was improper for Beason, the defendant's parole officer, to be involved in the negotiation of his sentencing agreement with the State. We find no merit to the defendant's argument in this regard. The record shows that the defendant sought out Beason's aid after being convicted of simple robbery and that Beason repeatedly urged the defendant to seek advice of counsel in this matter. Moreover, as outlined hereinabove, we find that ultimately the defendant chose to proceed with benefit of trial counsel in conformity with his earlier negotiated sentencing agreement. Therefore, *272 any issue regarding Beason's involvement in this matter as a mediator is now moot.
In an ancillary matter, the defendant also urges that defense counsel was ineffective because she was not initially informed of the sentence recommendation agreement. First, we note that the record affirmatively establishes that the defendant chose not to involve trial counsel in his negotiations with the State and that he failed to divulge the sentence agreement to trial counsel. Accordingly, the defendant cannot urge this as error, since he created the situation complained of. Second, in accordance with the holding of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), it is incumbent upon the defendant to show that counsel's lack of knowledge of the sentence agreement prejudiced him. Contrary to the defendant's assertion, the record shows that the defendant chose to adhere to the sentencing agreement and that trial counsel actively attempted to aid the defendant in his compliance with the sentencing agreement. It was the defendant's actions by failing to comply with the obligations outlined in the agreement that ultimately prejudiced him, not trial counsel's lack of knowledge of the agreement. Therefore, we find no merit to the defendant's assignments of error.

ERRORS PATENT REVIEW
Our review of the record uncovers an error patent. Despite our discovery of this error, it neither requires reversal of the defendant's conviction nor affects the sentence imposed.
La.Code Crim.P. art. 930.8 provides that at the time of sentencing the sentencing court shall inform the defendant of the prescriptive period for post-conviction relief. In the present case, the record reveals that the sentencing court did not so inform the defendant. This defect has no bearing on whether the sentence is excessive and therefore is not grounds to reverse the sentence or remand the case for resentencing. La. Code Crim.P. art. 921. The three year prescriptive period does not begin to run until the judgment is final under La.Code Crim.P. art. 914 or 922, therefore, prescription is not yet running. We hereby direct the trial court to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file proof that the defendant received the notice in the record of the proceedings. State v. Cox, 604 So.2d 189 (La.App. 2 Cir.1992).

DECREE
For the foregoing reasons, the defendant's conviction and sentence are affirmed with instructions.
AFFIRMED WITH INSTRUCTIONS.
NOTES
[1] In a supplemental brief, the defendant attempts to level ethical violations against the State for negotiating the sentencing agreement without involving his trial counsel. We find no merit to defendant's argument in this regard for the same reasons outlined hereinabove. We further point out that we are unable to consider the defendant's complaint to the office of the Disciplinary Counsel and the State's response to that complaint. These letters were not introduced into the record in the trial court and do not form part of the record before us.