PER CURIAM.
1(Writ granted. The defendant is a juvenile who was charged with two serious crimes by petition of delinquency: second degree murder of Wendy Byrnes, as a principal, and armed robbery of Dan Rous-seve. The State filed a motion to transfer the case to Orleans Parish Criminal District Court due to the severity of the crimes. The State subsequently withdrew that motion and entered into a plea agreement with the defendant. The defendant pleaded nolo contendere to both charges on March 30, 2011, at which time the plea agreement took effect.
The relevant provisions of the plea agreement stated:
2. GED Efforts. The Juvenile further agrees to obtain a General Equivalency Diploma (“GED”) or, alternatively, make good faith efforts toward obtaining a GED by actively participating in GED coursework, if it is offered and available *786 upon his confinement at the juvenile facility to which he is assigned and confined (the “Facility”). To the extent that the Facility does not offer a GED program or does not have GED coursework available, the Juvenile must make good faith efforts by actively participating in academic coursework, if it is offered and available at the Facility upon his confinement.
3. Vo-Tech Efforts. The Juvenile further agrees to obtain a trade or skill through a trade/vocational program offered and available at the Facility upon his confinement or, alternatively, to make good faith efforts by actively participating in a trade/vocational program, if one is offered and available at the Facility upon his confinement.
4. Good Faith Defined. Good faith shall be established by reviewing Juvenile’s attendance, participation, teacher evaluations, or other relevant measures of proficiency. It is recommended that upon his | gconfinement at the Facility, the Juvenile be administered the Test for Adult Basic Education (“TABE”) to establish a baseline of the Juvenile’s current level of academic proficiency.
5. The state acknowledges that the Juvenile has been evaluated by both psychiatrist and psychologist and it has been determined that he meets the criteria for Borderline Intellectual Functioning. Additionally, it was determined that he has learning disability, specifically, a Reading Disorder, and a Disorder of Written Expression. Therefore, the Juvenile is not being required to obtain a GED or High School Diploma or even complete a Vo-Tech Program, but to actively participate to the best of his ability in these programs.
On October 11, 2011, defendant filed a report of compliance and motion to set aside plea and dismissal of all charges. The state filed its response, alleging that defendant had not complied -with paragraphs two and three of the plea agreement. After hearings on November 18, 2011, and December 6, 2011, the juvenile court ruled that six months was not a sufficient time period in which to determine defendant’s level of compliance with the plea agreement “that has a life span of four years and where the spirit of the [a]greement is to prepare [defendant] for success upon his release, or attempt to do so,” and reset the matter for a hearing in May 2012.
On February 10, 2012, the court issued its judgment on the November and December 2011 sentence review, and ordered that (1) the juvenile facility provide defendant with a tutor for a minimum of three times per week for a minimum of one hour per day; (2) defendant be placed in the Culinary Arts Program upon the next opening in the program; and (3) defendant undergo additional psychological evaluations and academic testing.
On May 2, 2012, defendant filed a supplemental monitoring report of compliance and motion to withdraw the plea and dismiss all charges. On May 9, 2012, the state filed its response and objection to defendant’s motion, again reasserting that defendant had not satisfied the educational requirements of the agreement. The court conducted additional hearings on May 10, 23, 25, 31, and July |319, 2012. On October 12, 2012, after considering the nearly 900 pages of testimony and voluminous exhibits,[1] the juvenile court ruled that defendant had complied with the substantive portions *787 of the plea agreement and granted the motion to set aside the adjudication. It released defendant and placed him under the supervision of an electronic monitoring device.
In its written reasons, the court specifically cited several witnesses and exhibits to support its conclusion:
- Dr. Kristen Luscher’s testimony that, due to his learning disabilities, defendant will never perform academically higher than a seventh grade level and likely would be unable to earn a GED. The juvenile court noted that defendant’s most recent TABE scores were consistent with her conclusions and emphasized that it is “unlikely that he will achieve academic functioning above the seventh grade level.”
- Dr. Joy Terrell’s testimony echoing the conclusions of Dr. Luscher. Dr. Terrell testified that defendant’s ability to receive information is equivalent to that of an eleven-year-old and that his ability to express himself is equivalent to that of an eight-year-old.
- Evidence reflecting that the Culinary Arts Program is the only vocational program offered at the Bridge City Center and that there was never an opening in the program while defendant was detained there. Therefore, it determined that this condition of the plea agreement never became operative.
- Emphasizing that the plea agreement defines “good faith” in terms of “active participation,” the juvenile court calculated that defendant attended 84% of his tutoring sessions and that his absences were due to court attendance, several physical ailments, such as pink eye, and a disciplinary matter.
- Testimony by staff officials that, in general, defendant participated in class and was cooperative. The court explained that “[tjhough there were specific individual comments that were negative regarding [defendant’s] attitude and participation, taken as a whole, the majority of the comments were positive.”
The Fourth Circuit affirmed the ruling of the juvenile court. State in the 4Interest of E.C., 12-1744 (La.App. 4 Cir. 9/18/13), unpub’d. It determined that the plea agreement was a valid contract and the record contained overwhelming factual support for the lower court’s conclusion that defendant complied with the terms of the agreement. Rather than enumerating its own reasons for judgment, the appellate court merely quoted the lengthy reasons given by the juvenile court in its ruling. The state filed a writ application which we now consider.
DISCUSSION
As a general matter, in determining the validity of agreements not to prosecute or of plea agreements, the courts generally refer to rules of contract law, although a defendant’s constitutional right to fairness may be broader than his or her rights under the law of contract. See State v. Louis, 94-0761 (La.11/30/94), 645 So.2d 1144, 1148-49 (court “refer[s] first to the law of contracts for application by analogy,” but founds its analysis on “considerations of constitutional fairness”) (citing Ricketts v. Adamson, 483 U.S. 1, 16, 107 S.Ct. 2680, 2689, 97 L.Ed.2d 1 (1987)); State v. Lewis, 539 So.2d 1199, 1204-05 (La.1989) (commercial contract law only a point of departure in construing a plea bargain agreement); State v. Nall, 379 So.2d 731, 734 (La.1980) (“[Because] the constitutional right of a person accused of a crime is greater than that defined by the *788 law of contract ... constitutional decisions should not be made to turn in favor of the state ... simply because of the niceties of contract law.”). The party demanding specific performance of a contract has the burden of proving its existence. Louis, 645 So.2d at 1149.
In this case, there was a valid plea agreement. The State offered the benefit of the potential dismissal of the serious charges pending against defendant, and defendant agreed to the conditions placed upon him in the plea agreement. It is undisputed that the Bridge City facility offers only one vo-tech program, which is | .¡focused on culinary arts. Chef Ronald Sonnier, the instructor of the program, testified about its logistics and explained that there are two classes during the day, with a morning session for students with a GED and an afternoon session for students working towards that degree, those students classified as “Basic Skill One,” which applies to juveniles who have opted not to pursue a high school diploma, or students whose academic level meets a certain standard. He further testified that students usually apply and submit their application to Trenisha Stanislas, an instructor at the high school. The chef noted that he typically takes on, at most, six students in one cycle. At the time of the December 2011 hearing, Chef Sonnier stated that there were 26 students on the waiting list for the program, but that two spaces in the program had become available. Finally, he confirmed that a court could order a juvenile into the program and that bypasses any approval by facility administration. Defense counsel clarified that statement with Sonnier:
Q. So, there’s six students per class, like you just said, and you said there are 26 students, currently, on the waiting list?
A: Right.
Q: And if, in fact, there’s an opening and the [cjourt orders it, he would be placed on that waiting list to be put into the class?
A: Right, absolutely. That’s happened before.
Q: And if, in fact, he gets into the class, you said earlier that the two classes that are offered during the day, he would be part of that class?
A: Right, the afternoon.
Q: So, in order to be a part of the program, would he have to miss his academic instruction to be in that class in order to take part in the vocational training?
A. It depends on what his schedule is.
The juvenile court abused its discretion in holding that the defendant complied with the terms of his plea agreement where no good faith effort was made on the part |fiof the defendant to obtain a vocational skill. The above testimony was given on December 6, 2011, which gave defendant eleven months to follow up and enforce the ruling of the trial court to be put into the culinary program but he failed to do so. While defendant contends that he had no realistic opportunity to participate in the program due to not meeting the general requirements to participate, this is obviated by the fact that the court can, and did, order defendant into the program. There is no indication that defendant had even placed his name on the waiting list for the Culinary Arts Program. The fact that defendant would have to wait to enter the program does not in any way support the contention that defendant had no realistic opportunity to participate and furthermore does not render the program unavailable to defendant. Based on the fact that openings were available in the program and at no point did defendant ever follow up and join the program, this is *789 no showing that he has actively participated to the best of his ability in order to obtain a vocational skill. Further, to allow defendant to re-enter society at this point would frustrate the spirit of the plea agreement, which was to provide a means to deter defendant from a life of crime and to provide him with some life skills. Significant to this determination is the fact that defendant received the benefit of a reduced sentence and had the state elected to transfer him to criminal district court, he would have faced incarceration until his thirty-first birthday.
DECREE
For the above reasons, we reverse the judgments of the lower courts and order defendant be remanded to the Bridge City Center facility to comply with paragraph (3) of the plea agreement, specifically, that he be placed in the Culinary Arts Program upon the next opening in the program.
WRIT GRANTED; REVERSED AND RENDERED.
JOHNSON, C.J., dissents and assigns reasons.
WEIMER, J., dissents and assigns reasons.
HUGHES, J., dissents for the reasons assigned by JOHNSON, C.J. and WEIMER, J.

. Various exhibits were filed under seal and reviewed as part of the record by the Fourth Circuit. On motion of the state, the sealed records were transferred to this Court for review in connection with the state’s pending writ application.