JOHNSON, Chief Justice,
Dissents and assigns reasons.
hit is unconscionable to remand this defendant to secure confinement in a juvenile facility to participate in a culinary arts program, two years after his release, when the opportunity to participate was never available to him. In my view, the majority has erred in reversing the lower courts, since the factual findings made by the juvenile court are not only reasonable, but are also, as the Court of Appeal noted, overwhelmingly supported by the record in this case.
The facts of this case are critical to understanding the implications of this court’s proposed action. In 2009, at the age of fourteen, the defendant was one of three individuals charged with second-degree murder and armed robbery. As the majority correctly points out, the State originally filed a motion to transfer the defendant’s case to Orleans Parish Criminal District Court due to the severity of the crimes. However, for reasons we are not able to discern, the State withdrew the motion and, after lengthy negotiations, the State and the defense reached a plea agreement. Notably, the record contains no colloquy detailing the extent of the defendant’s involvement in these crimes. The presiding juvenile court judge noted there was no evidence to suggest this particular defendant “possessed, discharged, or brandished a weapon, or that he made a demand or took any action towards the victims.” In re E.C., 2009-026-05 DQ-F, p. 1, Juvenile Court of New Orleans, Per Curiam of 10/12/12, Doherty, J.
2In fact, according to the investigating detective, the two other defendants charged with these crimes, confessed to their participation. Defendant Reggie Douglas confessed to being the shooter, and defendant Drey Lewis confessed to being present with Reggie Douglas at the time of the crimes. Further, neither of these defendants implicated E.C. in these crimes. Witnesses also stated that two perpetrators were involved in the commission of the crimes, not three.[1]
*790 On March 30, 2011, in exchange for a nolo contendere plea under North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.E.2d 162 (1970), the State agreed not to file additional charges against the defendant. The State also agreed to dismiss the petition and expunge the arrest upon compliance with the plea agreement. The juvenile court subsequently ordered the defendant into custody until his twenty-first birthday, with credit for time served, for the two years he was already detained. The Office of Juvenile Justice placed the defendant in the Bridge City Correctional Center for Youth (hereinafter “BCCY”) in April of 2011.
On October 11, 2011, the defense filed a Report of Compliance and Motion to Set Aside the Plea. The State filed a response, alleging the defendant had not complied with paragraphs two (2) and three (3) of the plea agreement, referring specifically to provisions for the defendant to put forth a “good faith effort” to obtain a GED and a vocational skill. The juvenile court concluded that six months was not a sufficient amount of time to determine compliance with the plea agreement. Therefore, the Court reset the matter for further hearings on compliance in May of 2012.
During the second round of compliance hearings, the court heard testimony from eight witnesses regarding the progress of the defendant. Approximately 900 pages of testimony on the defendant’s compliance with the terms of the plea agreement were accumulated. The juvenile court ultimately found the defendant | shad, in fact, made a good faith effort to comply. However, the vocational skills program was not available to the defendant during his confinement.
Notably, the majority does not find the defendant failed to comply with paragraph two (2) of the plea agreement, which required the defendant’s “good faith efforts” to obtain a General Equivalency Diploma (GED). According to several witnesses, including teachers and counselors who worked closely with the defendant, he was focused on his coursework and put forth his best efforts to complete assignments, despite significant learning disabilities. The majority finds instead that the defendant did not comply with the terms of paragraph three (3) of the plea agreement, with respect to his efforts to obtain a vocational skill. Paragraph three (3) provides:
3. Vo-Tech Efforts. The Juvenile further agrees to obtain a trade or skill through a trade/vocations program offered and available at the Facility upon his confinement or, alternatively, to make good faith efforts by actively participating in a trade/vocational program, if one is offered and available at the facility upon his confinement. (Emphasis added.)
Initially, it is important to point out that the plain language in this section of the plea agreement clearly contains a clause which renders its requirements entirely conditioned upon whether or not a vocational program was actually offered and available to the defendant during his confinement. Based upon a thorough review of the testimony given below, the juvenile court correctly found, as a fact, the vocational skills program was not available to the defendant, therefore rendering paragraph three (3) of the plea agreement inoperable.
The only vocational skills program offered at Bridge City Center for Youth (BCCY) while the defendant was in custody was a culinary arts program headed by Chef Ronald Sonnier. Only six students are admitted to the program at a time and, at the time of the hearings in the case, there were twenty-six students on the *791 waiting list for admission to the program. Because the defendant was working 14towards obtaining a General Equivalency Diploma (GED) rather than a high school diploma, he would be required to enter the “Basic Skill One” section of the culinary arts program. The “Basic Skill One” program was offered in the afternoon during a time that conflicted with the defendant’s academic course schedule. Paragraph two (2) of the plea agreement provides that the defendant must make “good faith efforts” to obtain a GED. The culinary arts program schedule therefore conflicted with the defendant’s efforts to obtain a GED through no fault of his own. It was not feasible for the defendant to simultaneously participate in his academic courses and the culinary arts program. Furthermore, Chef Sonnier testified that according to Ms. Trenisha Stanislas, a teacher at BCCY, the defendant did not even meet the minimum academic standards for admission into the culinary arts program, despite his academic progress at the time in question. Chef Sonnier was questioned regarding E.C.’s possibility of participation in the program:
By defense counsel:
Q. Do you have any knowledge of what [E.C.]’s current academic level is?
A. Well, his case manager had contacted me to see about getting him in, and I contacted the Guidance Counselor their [sic] at Bridge City, Ms. Stanislas, and she told me that, at the present time, his academic level was not up to par for him to be able to be put into Culinary Arts.
On cross:
Q. So, you were contacted by [E.C.]’s case manager regarding his eligibility for your program, correct?
A. Right, Ms. Ade.
Q. And so, you, then had to bounce it to the Guidance Counselor, Ms. Stanis-las, to see if he was academically eligible?
A. Right, because she places the kids. Whenever I have an opening come up in Culinary Arts, she places the kids in there.
Q. And, according to Ms. Stanislas, he was not academically eligible for the program?
| sA. Right, at that time.
Q. Chef Sonnier, do you know, when, approximately, that was that the conversation, was with Ms. Stanislas?
A. About 30 days ago, it’s been recent.
[[Image here]]
By the Court:
I have one question for you. You stated that Ms. Stanislas is the one who actually places the kids in the program when you have a vacancy.
The Witness:
Right
[[Image here]]
By defense counsel:
Q. If, in fact, if the Court does order that [E.C.] is placed into your—
A. That has been the norm before.
Q. And if, in fact, the Court—
A. If the position is open—
The Court
You mean if you have space in your program?
The Witness
Right. Because I only take six students in each class because of all the knives and tools and stuff they handle
[[Image here]]
This testimony undeniably demonstrates that the culinary arts program was not available to the defendant. Nonetheless, the majority concludes no “good faith effort” was made on the part of the defen *792 dant to obtain a vocational skill, and thus the juvenile court abused its discretion in finding that the defendant complied with the terms of the plea agreement. It is well established that the standard of review of an appellate court, in findings of fact, is a manifest error standard. An appellate court must find from the record that a reasonable factual basis does not exist for a trial court’s findings, and the record must establish that finding is clearly wrong, or manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). |fiThis juvenile court found, as a matter of fact, that the culinary arts program was not available to the defendant. In turn, the court of appeal found no error in this determination. Remarkably, a majority of this court has reached a different conclusion, apparently based on testimony that the twenty-six person waiting list could be circumvented by a Court Order, and that two spaces actually opened up in the program, but the defendant failed to take advantage of them. This conclusion is misinformed.
In fact, there was a Court Order handed down by the juvenile court, ordering that the defendant be placed in the culinary arts program, upon the “immediate next opening.” The majority cites the testimony of Chef Sonnier where he states it was his understanding that a Court Order would only have the effect of placing the defendant’s name on the waiting list, not actually enroll him in the culinary arts program. Therefore, the only reasonable conclusion we can draw, in light of the lengthy waiting list, is that a space in the culinary arts program had not become available.
According to the record, the defendant applied for and was accepted to culinary arts programs at Liberty’s Kitchen and Café Reconcile, pending his release from BCCY. We have no information regarding whether the defendant has attended either program since his release from secure custody in October of 2012. The court’s order sends the defendant back into custody indefinitely, or at least until his twenty-first birthday. This action not only modifies the actual terms of the plea agreement, but also renders those terms, which provided for the possibility of an early release, meaningless.
The action of the majority undermines the very purpose of the plea agreement. Upon entering the plea, E.C. relinquished a fundamental constitutional right to a trial. State v. Louis, 94-0761, p. 7 (La.11/30/94), 645 So.2d 1144, 1149-50. Moreover, by entering a nolo contedere plea under Alford, supra, he 7maintained his innocence of the crimes with which he was charged.
For the foregoing reasons, I respectfully dissent.

. Transcript of Motion Hearing 3/9/10, State of Louisiana v. Reggie Douglas, Drey Lewis, 485-536, Orleans Criminal District Court, Willard, J.