WEIMER, J.,
dissenting.
liThe majority essentially holds that the defendant received the benefit of a plea bargain, but without the defendant fulfilling his end of the bargain. Because I find the majority has given insufficient deference to the juvenile court’s findings and has negated the early release provisions of the plea bargain, I respectfully dissent.
The enforcement of a plea bargain, the majority correctly acknowledges, requires a court to “refer first to the law of contracts,” but a “criminal defendant’s constitutional right to fairness may be broader than his or her rights under contract laws.” State v. Louis, 94-0761 (La.11/30/94), 645 So.2d 1144, 1148-49. The majority overlooks, however, facets of this case that-as matters of fundamental fairness-compel the conclusion that the defendant must be released from any further remedial obligations as a condition of his plea agreement.
*793 In the ordinary case, the state can demand specific performance of a plea agreement, and the state has the burden of proving the obligations the state seeks to have the defendant perform. Id. at 1149. In the ordinary case, an “obligation may be dependent upon an uncertain event.” Id. However, the lines that a court must draw, even in the ordinary case, in determining whether the defendant has complied with the plea agreement, must comport with constitutional standards. In drawing those lines, “commercial contract law can do no more than to serve as an analogy or point 12of departure, since ‘plea agreements are constitutional contracts.’ ” Id. at 1148, quoting Ricketts v. Adamson, 483 U.S. 1, 16, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987). Such are the general rules for enforcing plea agreements in the ordinary case, but this is not the ordinary case.
As part of the plea agreement, the defendant here did not plead guilty. Instead, the defendant pled nolo contendere[1] to offenses for which he was arrested when he was 14 years old. The plea agreement called for the defendant to be incarcerated until his twenty-first birthday, but also allowed for the possibility of early release. Paragraph three of the plea agreement conditioned early release on the defendant’s good faith efforts to participate in General Equivalency Diploma (“GED”) course-work and to “actively participate] in a trade/vocational program, if one is offered.” (Emphasis added.)
These conditions from the plea agreement are discussed by the majority, but other aspects of the plea agreement, while recounted by the majority, should not be overlooked when considering whether the defendant has satisfied the agreement. Specifically, the state recognized in the following provision of the plea agreement that the defendant had serious cognitive impairments at the time the plea agreement was prepared:
|s5. The state acknowledges that the Juvenile has been evaluated by both psychiatrist and psychologist and it has been determined that he meets the criteria for Borderline Intellectual Functioning. Additionally, it was determined that he has learning disability, specifically, a Reading Disorder, and a Disorder of Written Expression. Therefore, the Juvenile is not being required to obtain a GED or High School Diploma or even complete a Vo-Tech Program, but to actively participate to the best of his ability in these programs. [Emphasis added.]
*794 The effect of the majority’s order is that the cognitively-impaired defendant is required to “participate” in a cooking program, but because of the quoted language from the plea agreement, he cannot be required to “complete” that cooking program. Due process obviously requires the defendant be given a meaningful opportunity to participate in the vo-tech component of the plea agreement, if one is offered. In this matter, the vo-tech component was not adequately offered to this juvenile.
Previously, this court recognized it cannot modify the terms of the plea agreement, because “[o]nce there is an offer and acceptance, the agreement is subject to specific performance.” Louis, 94-0761 at 10, 645 So.2d at 1149, citing La. C.C. art. 1986. Now, however, this court has gone well past modifying a plea agreement and has essentially re-written the defendant’s plea agreement to include a condition that the juvenile participate in a program never offered to him.
The record before this court shows that the cooking program is the sole vo-tech program offered at the defendant’s confinement facility. The juvenile court, in the course of considering what is now over 900 pages of testimony and exhibits (generated during seven hearings and one ruling, spanning a one-year period of time), found that “there was never an opening in the space-limited program while the youth has been at the facility.” In re E.C., 2009-026-05 DQ F, p. 5, Juvenile Court of New Orleans, Per Curiam of 10/12/12, Doherty, J. The majority of this court reaches a different conclusion, based solely on the program instructor’s remark that it might be ^possible to circumvent a 26-person waiting list in the event there was a court order to do so. Although the majority of this court now supplies such an order, this action does not erase the fact that there never was an order to circumvent the waiting list when the defendant moved the juvenile court to have his early release conditions evaluated. Moreover, the majority recounts — but apparently overlooks — the program instructor’s testimony that the cooking classes might conflict with the very same GED classes in which the majority accepts the defendant successfully participated.
The juvenile court gave this matter an impressive degree of consideration. After hearing testimony from experts in the cognitive sciences, who assessed the defendant’s abilities, the juvenile court determined “it is improbable that the youth will be able to obtain his GED.” The majority of this court, on a cold record, holds this same juvenile to the standards of diligence of an adult inasmuch as the majority penalizes the defendant for not putting his name on a waiting list that already contained the names of 26 other juveniles. The majority of this court orders that the defendant be placed in the cooking program “upon the next opening.” State of Louisiana in the Interest of E.C., 13-2483, p. 6 (La.6/13/14), 141 So.3d 785, 2014 WL 2694191.[2] Such an order only underscores the fact that the defendant should not be penalized for failing to place his name on the waiting list. After the defendant’s counsel submitted a Report of Compliance, the juvenile court issued this order in the fall of 2011: “[t]he [juvenile] Court or *795 dered the Office of Juvenile Justice to enroll and admit the youth to that program at the immediate next opening in the program.” (In re E.C. at p. 6.) 5Apparently, the judge presiding in the juvenile court could not effect the defendant’s enrollment in the cooking program; it follows that the cognitively-impaired juvenile defendant should not be penalized for failing to undertake the vain and useless act of placing himself on the program’s waiting list.
At the time of this writing, the defendant is over 19-and-a-half years old. Even absent early release, he must be released from confinement in approximately one- and-a-half years. Yet this court now purports to force the defendant into a cooking program (if the defendant can even be placed into the program before his twenty-first birthday), despite the prosecutor’s recognition that the defendant may lack the cognitive ability to complete the cooking program. I suggest the juvenile court judge is much more versed in the programs offered by the juvenile justice system than is this court. Moreover, the majority’s analysis grants no deference to the juvenile court’s evaluation of the defendant’s cognitive impairments and the lack of available positions in the cooking program. The majority’s order frustrates any measure by which the defendant can gain the early release opportunities promised him in the plea agreement. Although it would behoove this juvenile to achieve as much education as possible, he should not remain incarcerated for reasons beyond his control. Due process demands otherwise. Thus, I respectfully dissent.

. The term "nolo contendere" essentially translates as “no contest.” See State v. Villarreal, 99-827, p. 4 (La.App. 5 Cir. 2/16/00), 759 So.2d 126, 129. The plea of nolo contendere is distinct from a guilty plea. See La.C.Cr.P. art. 552 (describing plea of “nolo contendere" as one of four distinct pleas).
Here, the defendant entered a nolo conten-dere plea to being a principal to the crimes. A principal may not be the person who “directly commit[s] the act constituting the offense.” La. R.S. 14:24. In addition to pleading nolo contendere, the defendant cast his plea as an Alford plea. A definition of "a 'best interest’ or Alford plea, which derives from the United States Supreme Court case of North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), is one in which the defendant [has] pled guilty while maintaining his innocence.” State v. Stevenson, 45,371, pp. 4-5 (La.App. 2 Cir. 6/23/10), 41 So.3d 1273, 1276.
After sentencing and the defendant’s later motion for release from confinement, the juvenile court observed the defendant's involvement as a principal in the crimes was minimal: "There were no charges brought that the youth possessed, discharged, or brandished a weapon, or that he made a demand or took any action towards the victims.” (In re E.C., 2009-026-05 DQ F, p. 1, Juvenile Court of New Orleans, Per Curiam of 10/12/12, Doherty, J.).

. It should not be overlooked that the majority grants relief that the state never requested. Nowhere in the state's application has it sought an order placing the defendant into the detention center’s cooking program. This court’s order comes some two years after the taking of any evidence about the detention center, its programs, and the other offenders who may be eligible for the cooking program. Such an order may result in this juvenile hurdling others more worthy of a position in the program.