885 So.2d 530 (2004)
STATE of Louisiana
v.
Clive PEYREFITTE.
No. 20004-KK-0742.
Supreme Court of Louisiana.
October 15, 2004.
PER CURIAM:
Granted. The rulings below are reversed and the defendant's guilty pleas and sentences are reinstated.
In Ricketts v. Adamson, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987), the Supreme Court held that the Double Jeopardy Clause offers a defendant no protection from a second prosecution for the same offense, after sentencing and finality of his conviction by way of a guilty plea, as a consequence of voluntarily and unilaterally breaching the terms of a plea bargain with the state. However, the agreement in Adamson explicitly informed the defendant that in the event he did not testify against his former associates, the deal would be considered "`null and void and the original charge will be automatically reinstated.'" Adamson, 483 U.S. at 9, 107 S.Ct. at 2685. The Supreme Court thus found that "[t]he terms of the agreement could not be clearer: in the event of respondent's breach occasioned by a refusal to testify, the parties would be returned to the status quo ante, in which case respondent would have no double jeopardy defense to waive." Id., 483 U.S. at 10, 107 S.Ct. at 2685. Because the defendant "clearly appreciated and understood the consequences were he found to be in breach of the agreement," Adamson, 483 U.S. at 12, 107 S.Ct at 2687, his decision to renege on the agreement with the state represented a knowing and deliberate choice to upset the interests in finality of his conviction that the Double Jeopardy Clause would otherwise have protected. United States v. Scott, 437 U.S. 82, 92, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978) (Primary purpose of the Double Jeopardy Clause is "to protect the integrity of a final judgment....").
On the other hand, in the present case, the record establishes only that during the plea colloquy which immediately preceded sentencing, see La.C.Cr.P. art. 592 ("When a defendant pleads guilty, jeopardy begins when a valid sentence is imposed."), the trial court informed the defendant that he had obligations under the plea bargain and that failure to abide by the terms of his agreement with the state might expose him to a charge of perjury. The record does not disclose affirmatively that the defendant was also advised that he faced a second prosecution for the same criminal acts in the event he breached the plea bargain. Unlike the circumstances in Adamson, the present record thus fails to reveal that the defendant appreciated and understood the full consequences of breaching the plea bargain and thereby deliberately chose to upset the finality of his convictions and sentences when he decided not to abide by the terms of the agreement. Adamson therefore provides no authority for vacating the defendant's guilty pleas and sentences and exposing him to a second prosecution for the crimes originally charged by the state. See Dyer v. State, 34 P.3d 652 653-54 (Okla.Crim.App.2001) (distinguishing Adamson because "[t]he state merely stated that [defendant] could then be charged with perjury" if he breached his plea bargain, and *531 "[n]o other possible results of a breach were discussed."); cf. State v. Nall, 379 So.2d 731 (La.1980)(a defendant's unilateral breach of a plea bargain may constitute "cause" for setting aside his agreement with the state and returning the parties to their pre-plea positions in cases in which he or she has not yet been sentenced on his guilty plea and jeopardy has therefore not yet attached); State v. Kelly, 96-0903 (La.App. 5th Cir.11/12/97), 704 So.2d 800, writ denied, 97-3104 (La.4/9/98), 717 So.2d 1142 (same).
WEIMER, J., concurs and assigns additional reasons.
KIMBALL, VICTORY and TRAYLOR, JJ., would deny the writ.
WEIMER, J., concurring.
I concur and write only to elaborate on what transpired when the defendant entered the plea agreement.
The plea agreement in Ricketts v. Adamson,[1] 483 U.S. 1, 4, 107 S.Ct. 2680, 2683, 97 L.Ed.2d 1 (1987), specifically stated that if the defendant refused to testify "this entire agreement is null and void and the original charge will be automatically reinstated," and that "in the event this agreement becomes null and void, then the parties shall be returned to the positions they were in before this agreement." That is not the situation in the present case. Here, there was no stipulation, written or oral, that the agreement would become null and void and that the parties would be returned to their original positions in the event defendant failed to honor his end of the plea bargain. Rather, the entire exchange at the Boykin colloquy was as follows:
Ms. Wall [for the State]: Your Honor, one thing I wanted to add on Mr. Peyrefitte, the State has made the reductions in the charges, and as discussed in chambers, Mr. Peyrefitte agrees to cooperate with the State fully and provide truthful testimony if called upon.
The Court: Mr. Peyrefitte, do you understand you're under obligation under the agreement?
Mr. Peyrefitte: Yes, sir.
The Court: And do you understand that in the event of untruthful testimony, you could face perjury charges if you do not testify truthfully?
Mr. Peyrefitte: Yes, sir.
The State said nothing to contradict that which was stated by the trial court and, thus, acquiesced. This is vastly different from the plea agreement in Ricketts. In that case, in upholding the State's right to set aside the plea agreement, the United States Supreme Court noted:
The agreement specifies in two separate paragraphs the consequences that would flow from respondent's breach of *532 his promises. Paragraph 5 provides that if respondent refused to testify, "this entire agreement is null and void and the original charge will be automatically reinstated." Similarly, Paragraph 15 of the agreement states that "[i]n the event this agreement becomes null and void, then the parties shall be returned to the positions they were in before this agreement." Respondent unquestionably understood the meaning of these provisions. At the plea hearing, the trial judge read the plea agreement to respondent, line by line, and pointedly asked respondent whether he understood the provisions in Paragraphs 5 and 15. Respondent replied "Yes, sir," to each question. On this score, we do not find it significant, as did the Court of Appeals, that "double jeopardy" was not specifically waived by name in the plea agreement. Nor are we persuaded by the court's assertion that "[a]greeing that charges may be reinstituted... is not equivalent to agreeing that if they are reinstituted a double jeopardy defense is waived." The terms of the agreement could not be clearer: in the event of respondent's breach occasioned by a refusal to testify, the parties would be returned to the status quo ante, in which case respondent would have no double jeopardy defense to waive. And, an agreement specifying that charges may be reinstated given certain circumstances is, at least under the provisions of this plea agreement, precisely equivalent to an agreement waiving a double jeopardy defense.
Ricketts, 483 U.S. at 9-10, 107 S.Ct. at 2685-86 (citations omitted). Obviously, the decision in Ricketts was premised on the specific terms of the plea agreement, which are very different from those in this case. Here, the only understanding that can be implied from the plea agreement is Mr. Peyrefitte's understanding that if he failed to testify truthfully, he could be charged with perjury. There is absolutely no evidence that defendant waived his right to raise double jeopardy as a defense in the event the State attempted to vacate his guilty plea and sentence. Also, there is absolutely no evidence that defendant understood that his plea bargain could be rescinded and that he could be tried on the original charges if he breached his plea agreement.
The question posed in this case is whether defendant, in conjunction with his guilty plea pursuant to the plea bargain, waived his right to raise double jeopardy as a defense should the plea be vacated and the State attempt to re-institute the original charges. The trial court applied the law of obligations to find that the plea bargain agreement was vitiated by defendant's fraud. While this would ordinarily be the correct approach, and one sanctioned by this court in State v. Nall, 379 So.2d 731 (La.1980), the fact that defendant had begun serving his sentence and that jeopardy had attached takes this case out of the realm of obligations law. As this court noted in State v. Louis, 645 So.2d 1144 (La.1994):
The values that underlie commercial contract law, and that govern the relations between economic actors, are not coextensive with those that underlie the [D]ue Process Clause, and that govern relations between criminal defendants and the State. Unlike some commercial contracts, plea agreements must be construed in light of the rights and obligations created by the Constitution.
Louis, 645 So.2d at 1148 (quoting Ricketts, 483 U.S. at 16, 107 S.Ct. at 2689).
In this case, the trial court erred in failing to address the double jeopardy implications of the vacated plea. The court of appeal, on the other hand, correctly
*533 recognized that the central issue in this case is whether defendant waived his right to raise double jeopardy as a defense. However, the court of appeal went on to find that such a waiver occurred.
As to the waiver issue, both the State and the defendant rely on the same case, Ricketts, supra, which is procedurally on point with the facts of this case. However, even a cursory reading of the opinion reveals that it hinged on the precise language of the plea agreement which clearly and explicitly set forth the consequences of a failure to abide by the terms of the plea agreement. The agreement specifically stated that if the defendant failed to uphold his end of the agreement, "this entire agreement is null and void and the original charge will be automatically reinstated," and that "in the event this agreement becomes null and void, then the parties shall be returned to the positions they were in before this agreement." Given this explicit language, the Supreme Court had no difficulty in finding a waiver, even in the absence of a direct reference to the double jeopardy protection.
Compare that to the language in the instant agreement. In this case, after accepting the defendant's guilty plea and rendering sentence, the State informed the court that it wished to add to the record the fact that defendant agreed to cooperate with the State and provide truthful testimony in exchange for the reduced sentence. The court, with the State present, then asked defendant two questions: "Do you understand you're under obligation under the agreement?" and "Do you understand that in the event of untruthful testimony, you could face perjury charges if you do not testify truthfully?" The defendant's affirmative response to these questions, without more, simply does not evince a knowing and voluntary waiver of the right to double jeopardy protection. There is no indication that the defendant understood that the consequences of his failure to abide by the terms of the plea agreement would consist of anything more than a perjury charge.
The defendant entered into a plea agreement. We cannot modify the terms of the plea agreement. The defendant was specifically told that a perjury charge could be the consequence of untruthful testimony. New and different consequences cannot be imposed when there exists no waiver of the constitutionally and statutorily protected right against double jeopardy.
NOTES
[1] Ricketts v. Adamson, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987), remains the leading case on the double jeopardy implications of setting aside a final conviction by way of a guilty plea on the basis of a defendant's unilateral breach of a plea bargain. The decision has virtually no progeny. The scant jurisprudence in this area almost certainly reflects a general wariness by prosecutors of losing leverage over a witness as the result of a plea bargain in which the witness is sentenced before, as opposed to after, he or she testifies against a former criminal associate.

The Supreme Court assumed in Ricketts that double jeopardy attached at the time the defendant was actually sentenced. Ricketts, 483 U.S. at 8, 107 S.Ct. at 2685. Louisiana law, apparently reflecting the majority view, expressly provides that "[w]hen a defendant pleads guilty, jeopardy begins when a valid sentence is imposed." La.C.Cr.P. art. 592.
Louisiana Constitution article I, § 15 provides, in part, "no person shall be twice placed in jeopardy for the same offense."