926 So.2d 789 (2006)
STATE of Louisiana, Appellee
v.
Sash WYNNE, Appellant.
No. 40,921-KA.
Court of Appeal of Louisiana, Second Circuit.
April 12, 2006.
*792 Law Offices of James L. Fortson, by John N. Bokenfohr, Shreveport, for Appellant.
J. Schuyler Marvin, Webster Parish District Attorney, Charles A. Smith, Assistant District Attorney, for Appellee.
Before BROWN, CARAWAY and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the 26th Judicial District Court, Parish of Webster, State of Louisiana. Pursuant to a plea bargain agreement, Sash Wynne pled guilty to simple burglary, a violation of La. R.S. 14:62. He was subsequently sentenced to serve 12 years imprisonment at hard labor, with credit for time served. Wynne appeals his conviction and sentence. For the following reasons, we affirm.

FACTS
Wynne was originally charged with first degree murder, which was later reduced to second degree murder, for his alleged involvement in the October 2003 death of Joe Raspberry.[1] On December 23, 2004, Wynne appeared in court with his trial counsel and entered a plea of guilty to simple burglary. The trial court ordered a pre-sentence investigative report to be prepared. At the sentencing hearing, the trial court considered the PSI report as well as the factors contained in La. C. Cr. P. art. 894.1 and sentenced Wynne to serve 12 years imprisonment at hard labor, with credit for time served. Subsequently, Wynne filed a motion to reconsider sentence and to withdraw his guilty plea, which was denied by the trial court after a hearing and consideration of same. This appeal by Wynne ensued.

DISCUSSION

Withdrawal of Guilty Plea
In his first assignment of error, Wynne argues that the trial court erred in denying his motion to reconsider sentence and/or withdraw the guilty plea. Specifically, Wynne argues that his agreement with the state was to testify truthfully at Edwards' trial in exchange for mitigation regarding the length of his sentence, and it was never explained to him that he would receive the maximum sentence allowable for simple burglary. Wynne contends that he was offered and believed that he would *793 receive probation if he testified against Edwards. He maintains that he received no benefit from his truthful testimony against Edwards, the state failed to meet its obligation under the plea bargain agreement, and, as a result, he should have been allowed to withdraw his guilty plea; thus, the trial court erred in not allowing him to subsequently withdraw his guilty plea. We disagree.
A defendant has no absolute right to withdraw a guilty plea. State v. Hoover, 34,952 (La.App.2d Cir.04/05/01), 785 So.2d 184. A trial court, in its discretion, may allow a guilty plea to be withdrawn at any time prior to sentencing. La. C. Cr. P. art. 559(A). After sentence has been imposed, La. C. Cr. P. art. 559 does not apply, although the trial court can still grant a post-sentence motion to withdraw a guilty plea. If the trial court finds either that the guilty plea was not free and voluntary or that the Boykin colloquy was inadequate (to the extent of violating the defendant's constitutional rights), the trial court has the authority to vacate the sentence and set aside the plea. State v. Hoover, supra.
When the record establishes that an accused was informed of and waived his right to trial by jury, to confront his accusers and against self-incrimination (which in this case, Wynne was), the burden shifts to the accused to prove that despite this record, his guilty plea was involuntary. State v. Bradford, 627 So.2d 781 (La.App. 2d Cir.1993), writ denied, 94-0006 (La.04/22/94), 637 So.2d 154; see also Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Here, Wynne failed to meet that stated burden.
Initially, we point out that on appeal Wynne mischaracterizes the plea agreement between him and the state. He maintains that in exchange for his truthful testimony against Edwards, he was to receive mitigation regarding the length of his sentence, specifically a five-year probation. However, the record does not at all show this to be the plea bargain agreement between Wynne and the state.
At the commencement of Wynne's guilty plea proceeding, the state prefaced the proceeding with a statement that the only agreement between Wynne and the state was that Wynne would "testify truthfully" at the upcoming trial of Edwards, sentencing would be up to the court, and all other charges arising out of the events of October 10, 2003, would be dismissed. Wynne's attorney responded to that as being "agreeable." The trial court asked Wynne if he heard the state's statement and his attorney's response, and if he accepted the agreement. Wynne responded affirmatively. The state went on to describe the new bill of information (for simple burglary) to which Wynne would plead guilty.
The trial court asked Wynne if his attorney explained the minimum and maximum sentence he could receive on all of the original charges, and on the simple burglary charge to which he was about to plead, the colloquy being as follows:
The Court: And has [your attorney] also explained to you the minimum and the maximum sentence you could receive on the charge to which you are about to plead?
Mr. Wynne: Yes, sir.
The Court: Do you recall what the sentence range is?
Mr. Wynne: I think it's zero to twelve, ain't it?
The Court: Zero to twelve with or without hard labor, do you understand that?
Mr. Wynne: Yes, sir.

*794 The Court: And you understand that I will order a presentence investigation in your case.
Mr. Wynne: Yes, sir.
The Court: And that after I receive and review that presentence investigation I'll decide what your actual sentence will be, do you understand that?
Mr. Wynne: Yes, sir, yes, sir.
Upon further questioning by the trial court, Wynne acknowledged that he was satisfied with his legal representation, and he was fully aware of what was going on that day. Wynne denied being under the influence of any type of drug or alcoholic substance. The trial court also advised Wynne that by pleading guilty to a felony offense, it could be used against him in the future as a sentencing enhancement in a habitual offender proceeding, which he understood. The trial court then fully explained to Wynne his Boykin rights, and Wynne acknowledged that he understood and waived those rights by pleading guilty.
Wynne was again asked if he understood that a part of the condition of the plea bargain agreement was that he would testify truthfully against any co-defendants that went to trial, to which he responded, "Yes, sir." The trial court asked the district attorney if that was correct, and the district attorney responded that there were not any co-defendants on this particular bill, but the only remaining co-defendant on the prior bill was Edwards. Wynne's attorney agreed that this information was correct. The colloquy continued:
The Court: All right, so that is a condition of this plea and you understand that and agree to that, Mr. Wynne?
Mr. Wynne: Yes, sir.
The Court: All right. Any promise been made to you, any threat made against you to influence the plea you're about to make?
Mr. Wynne: No, sir. (Emphasis added).
In this case, Wynne filed his motion to withdraw his guilty plea after his sentence was imposed; thus La. C. Cr. P. art. 559 does not apply. The record established that Wynne was informed of and waived his right to trial by jury, to confront his accusers and against self-incrimination, and he also stated his understanding of those rights. Hence, the burden shifted to Wynne to prove that despite this record, his guilty plea was involuntary. See State v. Hoover, supra. Wynne fails to prove that his guilty plea was involuntary.
Wynne was given ample opportunity to express his understanding of his agreement with the state.[2] He agreed with the initial characterization of the plea agreement as explained by the state at the commencement of the hearing. He was carefully and fully advised of the sentencing range for simple burglary, and that a presentence investigation report would be ordered and reviewed by the trial court before determining Wynne's sentence. In fact, it is abundantly clear from the guilty plea transcript that Wynne understood that the sentencing range was "zero to twelve, ain't it," as he himself informed the trial court. Finally, he was asked explicitly if any promises had been made to him regarding his plea, and he responded no. Only after Wynne received the maximum sentence did he offer his own self-serving statement, as well as his mother's, that he was promised a probated sentence. Notably, Wynne claims that his trial attorney informed him of the sentencing promise; however, Wynne would not waive the attorney/client *795 privilege which would have allowed his trial attorney to testify regarding their discussions of the plea agreement.
Wynne also claims he met his end of the bargain with the state by testifying truthfully, but that the trial court's subjective belief that Wynne failed to do so resulted in the trial court sentencing him to the maximum penalty for simple burglary. Wynne argues that the trial court's belief caused the agreement between him and the state to be breached. It is well settled that a plea agreement is considered a contract between the state and the criminal defendant. See State v. Peyrefitte, XXXX-XXXX (La.10/15/04), 885 So.2d 530; State v. Nall, 379 So.2d 731 (1980); State v. Adams, 2004-77 (La.App. 3d Cir.09/29/04), 884 So.2d 694, writs denied, 2004-2709, 2004-2880 (La.02/25/05), 894 So.2d 1131-32; State v. Roberts, XXXX-XXXX (La.App. 1st Cir.06/21/02), 822 So.2d 156, writ denied, 2002-2054 (La.03/14/03), 839 So.2d 31.
We note that the plea agreement, as clearly stated on the record and agreed to by Wynne, contained two reciprocal elements: Wynne would testify truthfully at Edwards' trial (which he claims he did), and the state would agree to reduce the charges against Wynne from murder to simple burglary (which the state did). There was no agreement regarding Wynne's sentence. Clearly, the state met its end of the bargain by reducing the charges against Wynne to simple burglary. If anything, Wynne's failure to testify truthfully (as perceived by the trial court) may have given the state grounds to seek a withdrawal of the plea as a result of Wynne's breach of the agreement. However, considering the terms of this particular plea bargain agreement, we find it immaterial that the trial court may have had a subjective belief that Wynne failed to live up to his end of the deal, because there is no proof that a promise was made to Wynne regarding his sentencehe even admits at the guilty plea hearing that no promise was made to him. Thus, the trial court's stated subjective belief had no effect on the terms of the plea agreement between Wynne and the state.[3]
In this case, there is nothing on the record that indicates that the state or the trial court reneged on its agreement with Wynne or that Wynne's guilty plea was otherwise involuntary. The trial court did not err in denying Wynne's motion to withdraw his plea, and this assignment is without merit.

Factual Basis of the Pled Offense
In his second assignment of error, Wynne states that the trial court erred in that no factual basis ever existed for any element of the offense of simple burglary, La. R.S. 14:62. Wynne maintains that according to the testimony given at the hearing on the motion to reconsider sentence and to withdraw the guilty plea, he pled guilty to a crime that was never committed. He contends that during the guilty plea proceeding, the state recited the underlying facts of the case, but never claimed that Wynne committed any theft of a handgun or any theft whatsoever.
*796 A plea of guilty normally waives all non-jurisdictional defects in the proceedings prior to the plea, including insufficiency of the evidence. State v. Crosby, 338 So.2d 584 (La.1976); State v. Stephan, 38,612 (La.App.2d Cir.08/18/04), 880 So.2d 201. A validly entered guilty plea, or plea of nolo contendere, waives any right a defendant might have had to question the merits of the state's case and the factual basis underlying the conviction. State v. Bourgeois, 406 So.2d 550 (La.1981); State v. Hardy, 39,233 (La.App.2d Cir.01/26/05), 892 So.2d 710.
It also dispenses with any appellate review of the state's case against the defendant. State v. Hardy, supra; State v. Buggs, 567 So.2d 744 (La.App. 2d Cir. 1990). Notwithstanding that, we do note that at Wynne's guilty plea hearing, the state provided the following facts for the record:
... on or about October 10, 2003, this individual did, without authority, enter the dwelling belonging to Roger Collins located, excuse me, here in Webster Parish, Louisiana. Also, with him entered another individual named James Edwards and they did not have authority to be in the residence and while therein a theft was committed, that theft being of a firearm.
When the trial court asked Wynne if he heard that brief statement of the facts and whether those facts were "substantially correct," Wynne replied affirmatively. The trial court found that there was a factual basis to support a plea in this case and asked Wynne if he wished to plead guilty or not guilty to one count of simple burglary. Wynne replied, "Guilty."
Notably, there is no requirement that a guilty plea even be accompanied by the recitation of a factual basis for the crime. State v. Griffin, 633 So.2d 358 (La.App. 1st Cir.1993), writ denied, 94-0240 (La.10/14/94), 643 So.2d 157. "[T]he due process clause imposes no constitutional duty on state trial judges to ascertain a factual basis prior to accepting a guilty plea.... Louisiana law, unlike [federal law] has no statutory provision requiring accompaniment of a guilty plea by the recitation of a factual basis." Id. at 360, quoting State v. Perry, 515 So.2d 654 (La. App. 3rd Cir.1987).
Wynne points to testimony occurring after the entry of his guilty plea as evidence that the facts recited by the state did not support his plea. A trial court should consider all relevant factors related to the guilty plea; however, that consideration should be limited to factors that were present at the time of the guilty plea. See State v. Burnett, 33,739 (La. App.2d Cir.10/04/00), 768 So.2d 783, writ denied, XXXX-XXXX (La.11/02/01), 800 So.2d 864. Here, Wynne claims that information after his guilty plea should serve to invalidate his pleapointing to evidence he argues indicates that the burglary never occurred, specifically his testimony at Edwards' trial and the testimony at the hearing on his motion to reconsider sentence and to withdraw guilty plea. These factors were not brought forward at the time of the guilty plea, nor for that matter does the said testimony conclusively establish that a burglary did not occur.[4] Moreover, *797 nothing in the guilty plea transcript suggests that Wynne's plea was coerced or that Wynne had expressed his innocence or even held a subjective belief of his innocence. A review of the guilty plea transcript shows no irregularity in the proceedings in this regard, and this assignment of error is also without merit.

Sentencing
In his third and final assignment of error, Wynne argues that his 12 year sentence was excessive based on his criminal history and the mitigating factor that he testified as a state witness against Edwards.
In reviewing claims of excessive sentence, an appellate court uses a two-step process. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not a rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2d Cir.04/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.06/24/05), 904 So.2d 728.
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.03/01/00), 754 So.2d 392, 394, writ denied, XXXX-XXXX (La.02/02/01), 783 So.2d 385. However, a substantial advantage obtained by means of a plea bargain is a legitimate consideration in sentencing. State v. Ross, 35,552 (La.App.2d Cir.02/27/02), 811 So.2d 176. Where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. State v. Black, 28,100 (La. App.2d Cir.02/28/96), 669 So.2d 667, writ denied, 96-0836 (La.09/20/96), 679 So.2d 430.
Second, whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985).
At Wynne's sentencing hearing, the trial court acknowledged that it had received and reviewed Wynne's PSI report and thoroughly set forth the contents. After outlining a litany of crimes for which Wynne had pled guilty, the trial court concluded that Wynne obviously has a serious *798 problem with violence and noted that none of his probations were satisfactorily completed. The trial court further noted that Wynne was originally subject to capital punishment and then life imprisonment for his involvement in Raspberry's death and therefore obtained a substantial benefit from the reduction of charges. It then discussed the factors set forth in La. C. Cr. P. art. 894.1 and sentenced Wynne to serve 12 years imprisonment at hard labor, with credit for time servedthe maximum penalty for simple burglary.
We do not find Wynne's sentence to be excessive, in light of his PSI report and the particular facts of this entire case. We concur with the trial court's assessment of Wynnehe has a "serious problem with violence." As reflected in Wynne's PSI report, he has the following convictions:
 January 18, 1998, charged with simple burglary, pled guilty to misdemeanor theft;
 January 30, 1999, charged with second degree battery, pled guilty to simple battery;
 July 2, 1999, charged with second degree battery, pled guilty to simple battery;
 August 4, 2001, charged with public drunkenness, disturbing the peace, resisting an officer, battery on a police officer and simple battery, charges still pending; and
 August 21, 2003, charged with simple battery and aggravated assault, pled guilty as charged.
Additionally, Wynne received a substantial benefit in his plea with a reduction from a murder charge to simple burglaryhis sentencing exposure was greatly reduced. In fact, Wynne originally faced capital punishment and then life imprisonment for his involvement in Raspberry's death and therefore obtained a substantial benefit from the reduction of charges to simple burglaryeven if he did receive the maximum sentence for the crime. So considering, the maximum sentence for this particular defendant was reasonable and not excessive.

CONCLUSION
For the foregoing reasons, the conviction and sentence of Sash Wynne are affirmed.
AFFIRMED.
NOTES
[1] James Edwards was later tried and convicted of manslaughter and armed robbery in connection with the killing of Raspberry. His convictions and sentences were affirmed by this court in State v. Edwards, 40,423 (La. App.2d Cir.12/14/05), 918 So.2d 61, an unpublished opinion.
[2] As is discussed later, Wynne had previous experience in negotiating plea bargain agreements with the statehe had pled guilty to five previous charges as well.
[3] The facts here are clearly different than those in Roberts, supra, the case cited by Wynne, where the First Circuit gives an in depth discussion of a plea agreement as a contract and allowed the withdrawal of a guilty plea. In Roberts, the state made a plea agreement with the defendant, on the record, that reflected an anticipated sentence of probation, with the option of withdrawing the plea if the ultimate sentence was heavier. Because the trial court sentenced Roberts to seven years of hard labor, a sentence "more stern" than the agreed upon probation, the First Circuit determined that the plea was not free and voluntary and allowed the withdrawal of the plea. Id. at 160-61.
[4] At the hearing to withdraw Wynne's guilty plea, Roger Collins testified that he had no idea what happened on October 10, 2003. Roger testified that he was home during the time the burglary occurred, but that he was asleep. He admitted to owning the subject gun (which was said to be the murder weapon in the Edwards trial) and giving it to his son, David. He also admitted that the gun was missing. Although David stated that Wynne did not enter his house without permission nor did he take the gun, David did admit that he was not awake during the pertinent time period in which the burglary took place. Notably, at Edwards' trial, Wynne admitted to entering Collins' house that morning without permission. He also admitted to doing drugs with Edwards that morning as well.