HIGGINBOTHAM, J.
^Defendant, James ,E. Cotton, was charged by amended bill of information with two counts: (1) Count One — theft between $500.00 and $1,500.00, a violation of La. R.S. 14:67(B)(2) (prior to 2014 amendment); and .(2) Count Two — identity theft between $500.00 and $1,500.00, a violation of La. R.S. 14:67.16 (prior to 2014 amendment).[1] He pled not guilty. Following a jury trial,- defendant was found guilty as charged on count one, and guilty of identity theft in the amount of $1788.00.[2] The trial court sentenced defendant to four years at hard labor on each count and ordered these sentences to run concurrently. The trial court denied defendant’s motion to reconsider his sentences.[3] Defendant now appeals, alleging three assignments of error. For the following reasons, we affirm the conviction and sentence on count one, but reverse the conviction and sentence on count two.

FACTS

On August 23, 2013, Monica Smith went to a Valero gas station in Franklinton to purchase diesel fuel for her vehicle. As Ms. Smith exited her vehicle, defendant approached her and offered to give her $25.00 in diesel if she, in return, gave him $20.00 in cash. She declined. Over Ms. Smith’s objection, defendant used a credit Iscard to activate the fuel pump, and he *73 pumped $25.00 worth of diesel into Ms. Smith’s vehicle. Out of fear, Ms. Smith gave defendant $20.00 in cash.
After she paid defendant, Ms. Smith went inside the Valero convenience store and reported the incident to the cashier. The cashier called the police. Sergeant William Manning, of the Franklinton Police Department, responded to the call. After arriving at the gas station, Sergeant Manning was informed that the individual who approached Ms. Smith was one of two black males (the driver) in an older model, large car. Sergeant Manning learned that the.vehicle had left the gas station heading east on Washington Street toward Bogalu-sa. Sergeant Manning left the. Valero and located a vehicle matching the witnesses’ description. at a nearby Chevron truck stop, Inside were two black males, with defendant sitting in the driver’s seat.
Sergeant Manning spoke with defendant and asked him if he possessed a gas card. In response, defendant-produced a Wex Fleet gas credit card' that listed defendant’s name, “James Cotton,” and that of his employer, “Grady Crawford Construction” on the front. Defendant told Sergeant Manning that he had permission to use the Wex Fleet card. Sergeant Manning seized the card for further investigation.
In furtherance of his investigation, Sergeant Manning went back "to the Valero and secured a surveillance- video of defendant’s interaction with Ms. Smith. He also contacted Grady Crawford Construction. Defendant’s employment records indicate that he did not report to work at Grady Crawford Construction on at least ten weekdays between August 5-23, 2013. Thera Head, the company’s financial- controller, accessed an electronic statement of defendant’s Wex Fleet gas - card activity for August of 2013. This information showed numerous fuel purchases - made with defendant’s Wex Fleet card on days when he did not report to work. Ms. Head testified at trial that employees were authorized to use the Wex Fleet card 14during working hours, and for company vehicles only. Defendant did not have access to a-take-home company vehicle. Cross-referencing defendant’s time sheets with the Wex Fleet statement, Ms. Head determined that approximately $1,788.00 in fuel purchases were made at times when defendant was not working for Grady Crawford Construction. On August 30, 2013, Sergeant Manning secured an arrest warrant for defendant, who was ultimately arrested approximately one year later.

SUFFICIENCY OF EVIDENCE

When issues are raised on appeal as to both sufficiency of evidence and other trial errors, the appellate court should first review the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). Thus, we first address defendant’s second assignment of error in which defendant contends that the evidence presented at trial was insufficient to support his convictions for theft and identity theft. With respect to the theft conviction, defendant argues that the State failed to prove his identity as the person who made all but $25.00 of the unauthorized purchases on the Wex Fleet card, and he also argues that .the State did not adequately prove the valuation of the theft. Regarding the identity theft conviction, defendant claims that the State failed to prove he utilized the personal identifying information of another person, as well as the valuation tied to the identity theft.
 A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const, amend. XIV; La. Const, art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, this court must consider whether, after viewing *74 the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La.Code Crim. P. art. 821(B); State v. Ordodi, 2006-0207 (La.11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). The Jackson standard of review, incorporated in Article 821(B), is an |sobjective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Patorno, 2001-2585 (La. App. 1st Cir.6/21/02), 822 So.2d 141, 144.
When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Wright, 98-0601 (La.App. 1st Cir.2/19/99), 730 So.2d 485, 487, writs denied, 99-0802 (La.10/29/99), 748 So.2d 1157, and 2000-0895 (La.11/17/00), 773 So.2d 732.

Theft Between $500.00-$1500.00

On count one, defendant was charged with theft valued between $500.00 and $1500.00. See La. R.S. 14:67(B)(2) (prior to 2014 amendment). Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential. La. R.S. 14:67(A).
Theft is a specific intent crime. See State v. Bean, 2004-1527 (La.App. 1st Cir.3/24/05), 899 So.2d 702, 707, writ granted on other grounds, 2005-1106 (La.3/8/06), 925 So.2d 489, writ denied, 2005-1106 (La.11/3/06), 940 So.2d 652. Specific criminal intent is that “state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to | ^follow his act or failure to act.” La. R.S. 14:10(1). Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Thus, specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant’s actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the fact finder. State v. Henderson, 99-1945 (La.App. 1st Cir.6/23/00), 762 So.2d 747, 751, writ denied, 2000-2223 (La.6/15/01), 793 So.2d 1235.
Defendant asserts two arguments with respect to his theft conviction. First, he contends that the State only proved his identity as the perpetrator of a theft insofar as it tied him to the $25.00 purchase of diesel made in connection with Ms. Smith’s vehicle. Second, he argues that the State relied upon inadmissible hearsay in the form of a downloaded Wex Fleet statement to prove the amount misappropriated in the instant case. Defendant does not dispute that something of value has in fact been misappropriated or that any misappropriations were done with the intent to permanently deprive, so we do not directly *75 address those elements here, but we note that there is ample evidence to support these findings.
Defendant did not testify at trial. To prove defendant’s identity as the individual who perpetrated the theft, the State relied primarily upon circumstantial evidence. The only direct evidence tying defendant to an unauthorized use of the Wex Fleet .card was presented through Ms. Smith’s testimony that she was approached by defendant, who offered to put $25.00 worth of diesel into her vehicle in exchange for $20.00 in cash. Howeyer, the State presented extensive circumstantial evidence tying defendant to the unauthorized purchases using the Wex Fleet card. Ms. Head testified that the Wex Fleet card used by defendant was assigned to him, had his name on it, and required both a personal identification number (a “PIN” chosen either by the individual or the company) and odometer [7reading in order to make a purchase. The back of the Wex Fleet card contains a statement: “ODOMETER READING AND DRIVER ID# ARE REQUIRED FOR USE.” Defendant was given this card as part of his employment with Grady Crawford Construction, to be used for purchasing gas for company vehicles. Defendant was still in possession of the Wex Fleet card when Sergeant Manning seized it from him on August 23, 2013.
Defendant argues that no evidence was presented about the circumstances behind the individual-transactions not related to the transaction involving Ms. Smith. However, the personal knowledge required for the Wex Fleet card’s use, defendant’s absenteeism from work, the unauthorized transactions that occurred during this time, and defendant’s possession of the card on August 23, 2013 are strong circumstantial factors indicating that defendant continued to possess the Wex Fleet card and use it in an unauthorized manner during this time. Viewed in the light most favorable to the State, the circumstantial evidence supports the jury’s conclusion that defendant was the individual who made the numerous unauthorized purchases on the Wex Fleet card.
As a secondary matter, defendant argues that the State did not adequately prove the value of the amount misappropriated by defendant’s misuse of the Wex Fleet card. He contends that the State relied upon inadmissible hearsay in the form of the Wex Fleet statement to ascertain a valuation of the misappropriation. We note, however, that defendant failed to object to the introduction of the Wex Fleet statement or to Ms. Head’s uncontroverted testimony regarding the valuation (approximately $1,788.00) of the theft, which she derived from this statement. Because defendant failed to object to the introduction of this evidence, the issue has not been preserved for review. See La.Code Crim. P. art. 841(A); La.Code Evid. arts. 103(A)(1) and 803(6). Even if this evidence were hearsay, without an objection it constitutes- substantive evidence and may be used by the .trier of fact to the extent | sof any probative or persuasive powers that it might have. See State v. Harris, 444 So.2d 257, 262 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1234 (La.1984). Viewed in the light most favorable to the State, this uncontroverted evidence was adequate to support the jury’s conclusion regarding the valuation of the misappropriation.
An appellate court errs by substituting, its appreciation of the evidence and credibility of witnesses for that of the jury and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. See State v. Calloway, 2007-2306 (La.1/21/09), 1 So.3d 417, 418 (per *76 curiam). The jury heard, and rejected, defense counsel’s arguments that someone felse might have used the Wex Fleet card and that'the State failed to prove-valuation. We cannot say that the jury’s determination was irrational under the facts and circumstances presented to it. See Ordodi, 946 So.2d at 662.
This portion of defendant’s assignment of error is without merit.-

Identity Theft

Identity theft is the' intentional use or possession or transfer or attempted use with fraudulent intent by any person of any personal identifying information of another person to obtain, possess, or transfer, whether contemporaneously or not, credit, money, goods, services, or any thing else of value without the authorization or consént of the other person. La. R.S. 14:67.16(B). “Person” means any individual, partnership, association, joint stock association, trust, - corporation, or other businéss entity whether incorporated or not. La. R.S. 14:67.16(A)(2) (prior to 2014 amendment). In pertinent part, “personal identifying information” shall include but not be limited to an individual’s credit card number, See La. R.S. 14:67.16(A)(3)(e) (prior to 2014 amendment). - ■
On appeal, defendant argues that the State failed to present sufficient proof that he used the “personal identifying information of another person,” as required by |9La. R.S. 14:67.16(B), and also that the State failed to prove valuation. Defendant does not challenge the proof of any of the other elements of his identity theft conviction, so we do not address them here. We also note that the State adequately proved valuation for the same- reasons noted with respect to defendant’s conviction for theft. However, we agree with defendant and find'that the State failed to prove beyond a reasonable doubt that defendant used the personal identifying information of another person. •
We agree with the State that Grady Crawford Construction is a “person” under the identity theft- statute, and ■ we also agree that Grady Crawford Construction was the entity ultimately responsible for paying any balance on the Wex Fleet card. However, there are other facts — largely elicited by the State — -that support the conclusion that the Wex Fleet card served as defendant’s personal identifying information, not that of the company.
At trial, Ms. Head testified extensively regarding Grady Crawford Construction’s history of using the Wex Fleet card and the company’s issuance of such a card to defendant. Ms. Head stated, and the actual Wex Fleet card confirms, that defendant’s name was printed on the front of the card, along with the company’s name— “Grady Crawford Construction.” She explained that defendant’s name was on the card “[bjecause it’s assigned to him,” and the purpose of having defendant’s name on the card was “so that [the company] can track his fuel purchase, his purchases.” Ms. Head described that in the past, the company had not-issued cards to specific individuals, but instead would assign cards to particular company vehicles. However, the company found that this practice did not work well, as the cards would get lost, or switched among company vehicles, making this practice “chaotic.” Ms. Head testified-'that under- this practice, “[y]ou don’t know who is actually pumping the gas,” so that, difficulty led to the decision to issue individual employees their own cards..
| mOnce employees were issued their own cards, the cards could only be used by inputting a PIN and an odometer reading. Ms. Head explained that employees had the option of setting their own PINs, or having the company assign one for them, but she did not state which option defen *77 dant chose. , Company policy dictated that employees who were assigned the Wex Fleet cards only had authorization to fill company vehicles- with fuel. Defendant did not drive a take-home company vehicle.
When the issue of defendant’s unauthorized purchases was brought to her attention, Ms. Head was able to access an online history of 'purchased made with defendant’s Wex Fleet card; Included among the information listed in this transaction statement were: 1) defendant’s name; 2) the location, date, and time of fuel purchases (authorized and unauthorized); 3) the type of fuel purchased; and 4) the value , of the fuel purchased, The statement also contains a card number, “0381-1,” that exactly matches the “CARD NO.” listed on the Wex Fleet card. Moreover, this card number appears to act as a distinct identifier of defendant that is separate and apart from the account number, which is listed on the card itself, but not on the transaction statement,
“Another” refers to any other person or legal entity. See La. R.S. 14:2(A)(1). - The articles -of the Louisiana Criminal Code cannot be extended by analogy so as to create crimes not provided for therein; however, in order to promote justice and to effect the objects of the law, all of the Criminal Code’s provisions shall be giyen a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose óf the provision. See La. R.S. 14:3.
In practice, the primary difference between the theft and identity theft statutes is the latter’s requirement that the offender use the personal | uidentifying information of another person. Therefore, the words of the identity theft statute should be read with this particular difference- in mind. In other words, the use of the personal identifying information of another person is an essential element of identity theft. See La. R.S. 14:67.16(B).
Under the unique facts and circumstances of this case, we find the State did not prove beyond a reasonable doubt that defendant used the personal identifying information of another, as is required to prove identity theft. The uncontrovert-ed testimony indicates that the Wex Fleet card was issued jointly in the names of Grady Crawford Construction and defendant. While Grady Crawford Construction was undoubtedly identified by the account number under which the card was issued, the card itself contained a number that uniquely identified defendant as the holder of the card, and it required a PIN (possibly known only by defendant) for its use. As Ms.' Head’s own testimony indicated, the Wex Fleet cards had been' issued in such a manner ás to correct former record-keeping difficulties and to specifically identify the individuals who used them. Finally, on the basis of the information found on the seized card, Ms; Head quickly accessed and printed- the transaction history tied to defendant’s card alone. In sum, the Wex Fleet card personally identified defendant in more ways than it did any other person. In fact, it was due to the extensive identifying information that the card provided relative to "defendant that the State was able to circumstantially prove the theft alleged in count one.
We have carefully reviewed the entire record and conclude the jury’s verdict suggests a fundamental misunderstanding of the law at issue in determining defendant’s guilt. See State v. Lemoine, 2014-1158 (La.App. 1st Cir.5/6/15), 174 So.3d 31, 49. Under- the facts of this case, we conclude that' any rational trier of fact, after viewing all .of the evidence as favorably to the prosecution as a rational fact finder can, would necessarily-have a reasonable doubt *78 as to defendant’s guilt concerning the crime of identity theft. No rational trier of fact could have found the essential elements of the crime of identity theft — particularly the use of the personal | ^identifying information of another person — beyond a reasonable doubt. See Mussall, 523 So.2d at 1311-12.
This portion of defendant’s assignment of error has merit.[4] Accordingly, defendant’s conviction and sentence for identity theft are reversed. Because defendant’s third assignment of error relates to a jury instruction given with respect to count two, we pretermit discussion of that assignment of error.

REVOCATION OF PLEA OFFER

In his remaining assignment of error, defendant contends that he was denied due process and his right to a fair trial when the State revoked a plea offer after defendant had relied upon that offer by making partial restitution to Grady Crawford Construction.
After jury selection, but prior to the calling of the State’s first witness, the trial court heard arguments related to defendant’s motion to quash alleging that a purported plea bargain should be enforced. Defendant argued that he had previously reached an agreement with the previous prosecutor, Leigh Anne Wall, that the charges against him would be dropped in the event he made full restitution to the victim, Grady Crawford Construction. John Alford, the prosecutor who had taken Ms. Wall’s place, stated to the court that he did not know if a deal was offered, but he had no intention of standing by, offering, or agreeing to any such deal. Mr. Alford further argued that defendant had not lived up to his end of the purported plea offer because his final payment was made “at least a month” after revocation of the supposed offer. Mr. Alford noted that he spoke with Ms. Wall, and her file did not contain any note of this purported plea offer. Mr. Alford also noted that defendant had an outstanding drug charge, and it is not usual practice to offer a package deal dismissal with outstanding unrelated charges. Defense counsel reiterated the | ^argument that defendant had been told his charge would be reduced to a misdemeanor, or dismissed, if he simply paid the money back. Defense counsel stated that defendant had initially paid $762.00 on February 10, 2015, and was informed at a pretrial hearing the following day that he still owed $364.00, which he paid the week before the instant hearing (held in May, 2015).
In denying defendant’s motion to quash, the trial court first noted that no discussion of a plea bargain was on the record, which defense counsel confirmed. The trial court did recognize that some discussion about restitution and reduced or dismissed charges took place, but found that “it never reached the point, I believe, where there was a meeting of the minds where everyone was agreeing what would occur.” The court stated that while defendant might have had such an expectation, everything did not “come together in a timely fashion.” The court concluded:
And I think the State, until there was, it was done, it wasn’t moved on. There wasn’t a plea to the felonies. This was not paid timely. And it was still outstanding. Discussions to resolve things don’t mean that you have an agreement or contract, and that’s it. That’s it.
*79 In this case, I don’t believe there was an agreement for that to happen, a binding agreement between the State and the defense. I will acknowledgé the conversations took place just' as you mentioned.
After the conclusion of trial testimony, defendant proffered testimony from Ashley Fitzmorris, a legal assistant with the public defender’s' office who attended several pretrial conferences. Ms. Fitzmorris testified regarding the restitution amounts ($721.43 and $363.09) Ms. Wall gave to defendant and defense counsel. On cross-examination by the State, Ms. Fitzmorris testified that she does not sit in on every pretrial conference, and she was not present at the pretrial conference where Mr. Alford informed defense cóunsel and the court that any such plea offer was revoked. After Ms. Fitzmorris’s testimony, the prosecutor stated for the record that' defendant’s second restitution payment was received after he “revoked a deal that has never been discussed on the record.”
114In determining the validity of agreements not to prosecute or of plea agreements, Louisiana courts generally refer to rules of contract law, while recognizing at the same time that a criminal defendant’s constitutional right to fairness may be broader than his or her rights under contract law. See State v. Louis, 94-0761 (La.11/30/94), 645 So.2d 1144, 1148. The first step under contract law is to determine whether a contract was formed through offer and acceptance. La. Civ. Code art. 1927; Id., 645 So.2d at 1149. The party demanding performance of a contract has the burden of proving its existence. Id., 645 So.2d at 1149. In the context of plea bargains, a defendant may demand specific performance of the State’s promise if he can show that the parties reached an agreement, that he performed his part of the agreement, and that in doing so, he relinquished, a fundamental right. See Louis, 645 So.2d at 1149-1150. See also State v. Tanner, 425 So.2d 760, 763 (La.1983).
In the instant case, the defendant has not proved that he and the prosecutor reached an enforceable agreement in the first place. Nothing in his brief indicates that a final plea agreement was negotiated; the evidence indicates only that there was some initial discussion of a reduction or dismissal of his charges in exchange for restitution. Further, even if the parties had reached some kind of agreement, Mr. Alford revoked that agreement on behalf of the State prior to defendant’s second restitution payment, which itself was a condition of the purported plea bargain. Absent any showing of detrimental reliance prejudicial to the substantial rights of the accused, or evidence of devious practice by the State such as bad-faith negotiation designed to psychologically probe the defense or gain some other improper advantage, the State remains free to withdraw from a plea agreement up to the time the plea is entered. State v. Caminita, 411 So.2d 13, 16(La.), cert. denied, 459 U.S. 976, 103 S.Ct. 314, 74 L.Ed.2d 291 (1982).
11BThe defendant has made no showing of any “devious practice” by the State in this case. While the record indicates that Mr. Alford revoked whatever offer his predecessor may have made, he did so at least a month prior to trial, at a-time where defendant had not fulfilled his condition related to the purported offer. Defendant does not expressly argue any' detrimental-reliance prejudicial to his substantial rights, but to the extent he implicitly argues that his restitution payments qualify as such, we note that the trial court could have legally imposed such a requirement regardless of a plea or trial and conviction. See La.Code Crim. P. art. 883.2. Defen *80 dant has not definitively established that an enforceable plea agreement existed, that he fully complied with the terms of any such plea agreement, and that he was, therefore, entitled to specific performance.
This assignment of error is without merit. -•
CONVICTION AND SENTENCE ON COUNT ONE AFFIRMED; CONVICTION AND SENTENCE ON COUNT TWO REVERSED.

.All statutory references in the charges and this opinion are prior to the 2014 amendments, which revised the threshold dollar " amounts and penalty provisions for crimes of theft and revised terminology referring to persons with disabilities in the identity theft statute, See La. Acts 2014, No,'255 § 1 and La. Acts 2014, No. 811 §6. Additionally, we note that , the crime of identity theft does not contain a grade of offense for a value between $500.00 and $1,500.00. Rather, the grades of identity theft involve amounts greater than $1,000,00, amounts .between $500.00 and $.1,000.00, and othqr lower amounts. See La. R.S, 14:67.16(C) (prior to 2014 amendment). Because we ultimately find reversible error with defendant's conviction for identity theft irrespective of the amount taken, we simply note this error on the amended bill without further action.

. As with the defective bill, we note that the jury returned what is arguably a non-responsive verdict by writing in an amount on the verdict form greater than that with which defendant was charged to have stolen by means of identity theft. Again, however, because we ultimately find reversible error with defendant’s conviction for identity theft other than the amount taken, we note this error without further action,

. The trial court also denied defendant’s motions for new trial and postverdict judgment of acquittal, which were filed after sentencing and therefore untimely. See La.C.Cr.P. arts. 821(A) and 853.

. As part of this assignment of error, defendant also raised the issue of Double Jeopardy. Finding merit with defendant's sufficiency claim, we pretermit discussion of this additional claim for relief.