**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 KA 1285

STATE OF LOUISIANA

VERSUS

WILLIAM THOMAS JONES

Judgment Rendered: **MAY 1 1 2020**

\* \* \* \* \* \*

Appealed from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket Number 589073
Honorable Reginald T. Badeaux, III, Judge Presiding

\* \* \* \* \* \*

Warren L. Montgomery
District Attorney
Matthew Caplan
Assistant District Attorney
Covington, Louisiana

Counsel for Appellee
State of Louisiana

David F. Gremillion
New Orleans, Louisiana

Counsel for Defendant/Appellant
William Thomas Jones

\* \* \* \* \* \*

**BEFORE: WHIPPLE, C.J., GUIDRY, AND BURRIS,[1] JJ.**

---

[1]    The Honorable William J. Burris, retired, is serving as judge *pro tempore* by special appointment of the Louisiana Supreme Court.

**GUIDRY, J.**

The defendant, William Thomas Jones, Jr., was charged by grand jury indictment with malfeasance in office, a violation of La. R.S. 14:134 (count 1); theft of $5,000 or more but less than $25,000, a violation of La. R.S. 14:67(B) (count 2); and two counts of theft of a firearm, violations of La. R.S. 14:67.15 (counts 3 and 4). He pled not guilty and, following a jury trial, was found guilty as charged on counts 1, 3, and 4. He was found not guilty on count 2. The defendant filed a motion for post-verdict judgment of acquittal and a motion for new trial, both of which were denied. For the malfeasance in office conviction, the defendant was sentenced to four years imprisonment at hard labor. For each theft of a firearm conviction, he was sentenced to four years imprisonment at hard labor and a $1,000 fine; the first two years of these sentences were ordered to be served without benefit of parole, probation, or suspension of sentence. All sentences were ordered to run concurrently. The defendant now appeals, designating two assignments of error. We affirm the convictions and sentences and remand for correction of the minutes.

## FACTS

In May of 2016, Gerald Anderson was arrested for a hit-and-run on the Causeway Bridge. Near the scene, a pill bottle containing individually wrapped baggies of cocaine was found. The amount of cocaine was thirty-one grams. Officers also found $6,300 in cash on Anderson. The drugs and money were seized and placed into the evidence drop box at the Causeway Police Department (also "Department"). The defendant was the evidence custodian for the Department.

Anderson's case was subsequently dropped because the pill bottle containing cocaine could not be found by the Department. The Department, however, seized the cash under forfeiture law. By law, the Department had ten days to notify the

2

District Attorney's Office for the 22nd JDC of the seized cash. By November 2016, the District Attorney's Office had still not been notified by the Department about the cash. An investigation into the missing evidence began.

In late January of 2017, Lieutenant Michael Kelly, with the Causeway Police Department, spoke to the defendant. Around this time, the Department was moving to another building, so the defendant was in the process of preparing all the evidence for moving. The defendant informed Lieutenant Kelly that he knew the drugs and money were missing and had been looking for them, but he had been "real busy" with the move.

On January 27, 2017, since the evidence could not be found, the St. Tammany Parish Sheriff's Office took over the case. Detective Daniel Buckner, with the St. Tammany Parish Sheriff's Office, looked through the Department evidence room and the defendant's office. At the behest of Detective Buckner, Lieutenant Kelly set up an interview for the defendant at the Sheriff's Office complex in Slidell. The defendant met Detective Buckner in Slidell on the morning of February 1, 2017. Detective Buckner Mirandized the defendant and interviewed him. The defendant told Detective Buckner that he had taken the missing drugs and money. The defendant was arrested the same day.

Upon hearing of the defendant's arrest, Thomas Stewart contacted the police. Stewart had owned a convenience store in Isabel and had known the defendant for years. In the past, Stewart had purchased three guns from the defendant. The guns were a Smith & Wesson .40 caliber semi-automatic pistol, a Taurus .38 caliber five-shot revolver, and a Star 9mm pistol. An ATF trace of the Smith & Wesson .40 caliber and the Taurus .38 caliber revealed that these guns had been seized in cases, tagged, and placed in a safe in the evidence vault at the Department.

The defendant testified at trial. The defendant denied that he took the drugs

3

or cash. According to the defendant, he lied to Detective Buckner about taking the seized evidence because it was what the detective wanted to hear. Further, according to the defendant, Detective Buckner told him that nothing would happen to him. The defendant indicated he was under stress because he had lost everything in the 2016 flood and because of some family situations, while he was also in the middle of the big move to the new building. According to the defendant, he owned guns similar to the seized Smith & Wesson .40 and the Taurus .38 guns at the Department and, as the Department's firearms instructor, it was customary for him to use seized weapons in training officers. Therefore, according to the defendant, he was confused when he mistakenly sold the seized guns belonging to the Department to Stewart.

## ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, the defendant argues the evidence was insufficient to support the convictions for malfeasance in office and theft of a firearm. Specifically, the defendant contends the State failed to prove that he had the criminal intent to commit these crimes.

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); see La. C.Cr.P. art. 821(B); State v. Ordodi, 06-0207, p. 10 (La. 11/29/06), 946 So. 2d 654, 660; State v. Mussall, 523 So. 2d 1305, 1308-09 (La. 1988). The Jackson standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438

4

provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patorno, 01-2585, p. 5 (La. App. 1st Cir. 6/21/02), 822 So. 2d 141, 144.

Louisiana Revised Statutes 14:134 provides in pertinent part:

A. Malfeasance in office is committed when any public officer or public employee shall:

(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or

(2) Intentionally perform any such duty in an unlawful manner[.]

Louisiana Revised Statutes 14:134 does not criminalize all ethical violations and/or general derelictions of duty. The object of the malfeasance statute is to punish a breach of duty committed with the required culpable state of mind. To this end, the statute expressly limits its application to instances in which a public officer or employee *intentionally* refuses or fails to perform, or *intentionally* performs in an unlawful manner, any affirmative duty imposed by law upon him in his role as a public servant. The inclusion in the statute of a criminally culpable state of mind makes it clear that it applies only where the statutorily required *mens rea* is proven beyond a reasonable doubt. Thus, mere inadvertence or negligence, or even criminal negligence, will not support a violation of the malfeasance statute because the statute specifies the act or failure to act must be intentional. State v. Petitto, 10-0581, p. 13 (La. 3/15/11), 59 So. 3d 1245, 1254.

The duty lawfully required of the officer must be expressly imposed by law upon him because the officer is entitled to know exactly what conduct is expected of him in his official capacity and what conduct will expose him to criminal charges. Petitto, 10-0581 at 4-5, 59 So. 3d at 1249. In this case, the grand jury indictment explicitly set forth in count 1 the defendant committed malfeasance in office by intentionally performing a duty lawfully required of him in an unlawful manner, namely, by stealing controlled dangerous substances under his custody and

5

control.

In brief, the defendant notes that the evidence vault was to be relocated to a new building. The defendant, as evidence custodian, was tasked with packing and moving the evidence. During this move, according to the defendant, "while he was frantically looking for the missing money and cocaine evidence, the evidence room was turned upside down." As such, the defendant asserts that the failure to maintain the evidence was not an intentional act by him. According to the defendant, while his "actions may have been inadvertent or even negligent, they were not intentional as Louisiana law requires."

These assertions belie the defendant's own words. While being interviewed by Detective Buckner, the defendant admitted that he took the missing money and cocaine. The defendant told Detective Buckner that he spent the money on his family and that he "chunked" the cocaine into the river.

The defendant was the sole evidence custodian for the Causeway Police Department and was in charge of the evidence room and the evidence vault, where the seized evidence was stored. The defendant, tasked with the control and care of the evidence in his custody, took money and cocaine seized as part of a criminal case, and, according to him, spent the money and discarded the cocaine. Any rational juror could have concluded the theft of these items was clearly intentional, rather than inadvertent or negligent. At trial, the defendant testified he first told Detective Buckner he did not remember seeing any cocaine or the $6,300 in cash in the evidence vault. Later during the interview, however, the defendant said he took the cocaine and money. At trial, the defendant explained that he had lied to Detective Buckner about taking the cocaine and money because that is what the detective wanted to hear. He said he also lied to Detective Buckner because the detective had told him that nothing would happen to him. The jury, having heard both versions, was entitled to believe what the defendant had stated in his recorded

confession and to discount his self-serving testimony at trial. See State v. Brothers, 17-0870, p. 10 (La. App. 1st Cir. 11/1/17), 233 So. 3d 110, 116, writ denied, 17-2160 (La. 10/8/18), 253 So. 3d 803; State v. Taylor, 97-2261, p. 6 (La. App. 1st Cir. 9/25/98), 721 So. 2d 929, 932.

Louisiana Revised Statutes 14:67.15, in pertinent part, provides:

A. Theft of a firearm is the misappropriation or taking of a firearm which belongs to another, either without the consent of the other to the misappropriation or taking or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of the firearm is essential.

Theft is a crime of specific intent. Specific criminal intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). See State v. Cotton, 15-1623, pp. 5-6 (La. App. 1st Cir. 4/15/16), 194 So. 3d 69, 74, writ denied, 16-0897 (La. 4/24/17), 221 So. 3d 69.

The defendant contends the State failed to prove that he possessed the specific intent to deprive the owner permanently of a firearm. The defendant notes he was an avid gun collector and was the firearms instructor for the Causeway Police Department. According to the defendant, he had "access and use of the Causeway Police firearms for training purposes." The defendant asserts that no evidence or testimony proved he removed firearms from the evidence vault with the specific intent to deprive the Causeway Police Department of those firearms. According to the defendant, it was by mistake and confusion that he sold two guns that belonged to the Department because he "owns the exact same guns." The defendant suggests that the extreme stress he was under with his own personal issues, as well as being tasked with moving the entire evidence vault to a new location, caused an "oversight on his part" that was not criminal.

At trial, the defendant indicated that as the Department's firearms instructor, he used seized weapons to train fellow officers, and that he had permission to

7

possess these weapons. He then indicated that because he owned similar weapons to the guns that he sold to Stewart, he was confused and thought he was selling his own guns. However, Lieutenant Kelly subsequently testified that seized weapons were not used to train officers. Specifically, the following exchange took place between the prosecutor and Lieutenant Kelly:

Q. Okay. And is it proper protocol or procedure that weapons that are seized from civilians as a result of an investigation or otherwise, is it proper procedure for those weapons to be used at training in your department?

A. Absolutely not. We do not do that.

Lieutenant Conrad Franz, Jr., who retired as second in command of the Causeway Police Department, supervised twenty to thirty people, including the defendant. Lieutenant Franz testified that seized guns were kept in the evidence locker and were tagged. The evidence tags, normally affixed on the trigger guard, were pink and contained the item number, officer's name, and description of the property. The revolver chambers were kept open and the automatic slides were kept locked back.

Corporal Shawn Rice, with the Causeway Police Department, testified that the seized guns the defendant sold to Stewart would have been stored inside a safe, which was in the evidence vault. According to Corporal Rice, on a seized gun, a zip tie was placed through the trigger guard with an identifying tag. Corporal Rice further indicated that the defendant was in charge of the custody and control of these weapons.

Based on the foregoing, any rational juror could have concluded that the defendant, in selling guns owned by the Causeway Police Department to a civilian, clearly had the intent to deprive the Department permanently of the guns. The defendant suggested at trial that in selling to Stewart those Department guns that were so similar to the ones he owned, he had been confused and only later realized

he made a mistake.[2] If the defendant, however, still owned the similar guns at the time he sold the Department guns to Stewart, it is not clear what he was confused about. At any rate, the defendant would have had to remove the Department guns from the evidence safe and then remove the tags from the trigger guards before selling them. Moreover, the jury may not have believed the defendant's testimony about being confused or about how similar the guns were.

When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 448 So. 2d 676, 680 (La. 1984). In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Higgins, 03-1980, p. 6 (La. 4/1/05), 898 So. 2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). Moreover, the trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. Taylor, 97-2261 at 6, 721 So. 2d at 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342, p. 8 (La. 10/17/00), 772 So. 2d 78, 83. The jury's finding of guilt reflected the reasonable conclusion that, based on the testimonial and physical evidence, they believed the defendant had the specific

---

[2] Following is the relevant exchange on the similarity of the weapons:

    Q. Do you own weapons similar to this?
    A. Yes, sir.
    Q. In fact, you own this exact weapon, don't you?
    A. Yes, sir.
    Q. Do you own a weapon similar to this (indicating)?
    A. Yes, sir.
    Q. Do you still own those weapons?
    A. Yes, sir. . . .

intent to sell guns seized by the Department to a civilian. In finding the defendant guilty, the jury rejected the defendant's theory of innocence. See Captville, 448 So. 2d at 680-81.

After a thorough review of the record, we find that the evidence supports the guilty verdicts. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of malfeasance in office and of two counts of theft of a firearm. See State v. Calloway, 07-2306, p. 8 (La. 1/21/09), 1 So. 3d 417, 421 (per curiam).

This assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, the defendant argues that the trial court erred in denying his motion to suppress his purported confession. Specifically, the defendant contends his statement should have been suppressed because the investigator failed to notify him that the interview was pursuant to a criminal investigation.

Louisiana Revised Statutes 40:2531 provides in pertinent part:

A. The provisions of this Chapter shall apply only to police employees as defined by R.S. 40:1372(5), Louisiana P.O.S.T. certified probation and parole officers employed by the Louisiana Department of Public Safety and Corrections, division of probation and parole, and to those law enforcement officers employed by any municipality and campus police employed at any state-supported college or university who are under investigation with a view to possible disciplinary action, demotion, or dismissal.

B. Whenever a police employee or law enforcement officer is under investigation, the following minimum standards shall apply:

(1) The police employee or law enforcement officer being investigated shall be informed, at the commencement of interrogation, of the nature of the investigation and the identity and authority of the person conducting such investigation, and at the commencement of any interrogation, such officer shall be informed as to the identity of

10

all persons present during such interrogation. The police employee or law enforcement officer shall be allowed to make notes.

In brief, the defendant emphasizes that La. R.S. 40:2531(B)(1) provides in particular that the law enforcement officer being investigated "shall be informed, at the commencement of interrogation, of the nature of the investigation and the identity and authority of the person conducting such investigation." The defendant points out, correctly, that Detective Buckner did not inform him that the interview was pursuant to a criminal investigation. According to the defendant, he thought the interview by Detective Buckner was a disciplinary matter, and it was only when he was being interrogated by the detective that he realized it was a criminal investigation. Thus, the defendant contends, his interrogation was invalid because the minimum standards of La. R.S. 40:2531 were not met. He further contends that, as such, the trial court erred in denying the motion to suppress the statement.

When a trial court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court's discretion, i.e., unless such ruling is not supported by the evidence. See State v. Green, 94-0887, p. 11 (La. 5/22/95), 655 So. 2d 272, 280-81. However, a trial court's legal findings are subject to a *de novo* standard of review. See State v. Hunt, 09-1589, p. 6 (La. 12/1/09), 25 So. 3d 746, 751.

At the motion to suppress hearing, Detective Buckner indicated he did not inform the defendant prior to the interview that it was a criminal investigation. Detective Buckner was also not certain if he told the defendant which department he was with. Detective Buckner did, however, note that the interview was at the Sheriff's Office complex in Slidell and that the defendant arrived alone. Detective Buckner read the defendant his Miranda rights, and they both signed the Miranda rights waiver form. After signing the form, the defendant knowingly and voluntarily waived his rights. Detective Buckner noted that the Miranda rights form stated St. Tammany Sheriff's Office at the top. The Miranda rights form

11

signed and acknowledged by the defendant stated specifically that "Anything you say can and will be used against you in a court of law." The defendant indicated at trial that he had been a law enforcement officer for about twenty-five years.

Based on the foregoing, it should have been clear to the defendant that he was under criminal investigation when he was being interviewed by Detective Buckner. Moreover, La. R.S. 40:2531 had no application to Detective Buckner's interview of the defendant and, as such, cannot be used to invalidate the defendant's recorded statement.

The plain language of the statute suggests a criminal investigation is distinct from a civil administrative investigation. O'Hern v. Department of Police, 13-1416, p. 4 (La. 11/8/13), 131 So. 3d 29, 31 (per curiam). The last sentence of La. R.S. 40:2531(B)(7) specifically provides that nothing in this Paragraph shall limit any investigation of alleged criminal activity. As O'Hern noted, the language found in La. R.S. 40:2531 provides that an investigation shall be initiated within fourteen days of a formal complaint and, *unless involving allegations of criminal activity,* must be completed within sixty days. O'Hern, 13-1416 at 3, 131 So. 3d at 31. In Wyatt v. Harahan Municipal Fire and Police Civil Service Board, 06-81, p. 7 (La. App. 5th Cir. 7/25/06), 935 So. 2d 849, 853, writ denied, 06-2322 (La. 12/8/06), 943 So. 2d 1091, the officer appealed his termination alleging that the disciplinary investigation took more than sixty days. The Fifth Circuit sustained the termination, finding no violation of the statute because the preliminary investigation was an inquiry into "criminal activity" not governed by the sixty-day rule, and the subsequent disciplinary investigation was completed within sixty days. See O'Hern, 13-1416 at 5, 131 So. 3d at 32.

The statute also makes clear it applies to police employees who are under investigation with a view to possible "disciplinary action, demotion, or dismissal." La. R.S. 40:2531(A). Further, prior to questioning, the officer is granted at least

fourteen days to secure representation, during which time all questioning is suspended. La. R.S. 40:2531(B)(4). The defendant herein was placed on administrative leave on January 30, 2017, and interviewed by Detective Buckner two days later on February 1, 2017. Further, at no time during the defendant's interview did Detective Buckner suggest that his questioning was for administrative purposes or that the defendant had a period of time to have questioning deferred.

Accordingly, since Detective Buckner's questioning was not part of an administrative investigation subject to La. R.S. 40:2531, there was no requirement that the interview be conducted pursuant to this administrative statute. In its ruling, the trial court found, *inter alia*, that La. R.S. 40:2531 was not applicable in a criminal proceeding. We agree and find the trial court did not err or abuse its discretion in denying the motion to suppress.

This assignment of error is without merit.

## SENTENCING ERROR

This court routinely reviews the record for errors, whether or not such a request is made by a defendant. Under La. C.Cr.P. art. 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record in these proceedings, we have found a sentencing error.

For each theft of a firearm conviction, the defendant was sentenced to four years imprisonment at hard labor and a $1,000 fine. The trial court ordered that the first two years of these sentences were to be served without benefit of parole, probation, or suspension of sentence. A first offense penalty for theft of a firearm shall be imprisonment with or without hard labor for not less than two years nor more than ten years, without the benefit of probation, parole, or suspension of sentence and a fine of one thousand dollars. La. R.S. 14:67.15(C)(1). The plain

13

language of the statute requires that *whatever* sentence is imposed, *all* of it must be without benefits. Accordingly, the trial court erred in providing that only portions of each sentence would be served without benefits, and the sentence is illegally lenient. However, since the sentence is not inherently prejudicial to the defendant, and neither the State nor the defendant has raised this sentencing issue on appeal, we decline to correct the error. See State v. Price, 05-2514, pp. 18-22 (La. App. 1st Cir.12/28/06), 952 So. 2d 112, 123-25 (en banc), writ denied, 07-0130 (La. 2/22/08), 976 So. 2d 1277; State v. Lambert, 11-2006, pp. 15-16 (La. App. 1 Cir. 6/8/12), 93 So. 3d 771, 780-81, writ denied, 12-1592 (La. 1/25/13), 105 So. 3d 65

We also note that the minutes do not reflect that the defendant was ordered to pay a $1,000 fine for each theft of a firearm conviction. Since the fine is mandatory, we therefore remand the case to have the minutes amended to reflect that the defendant was ordered to pay a $1,000 fine for each theft of a firearm conviction.

**CONVICTIONS AND SENTENCES AFFIRMED REMANDED FOR CORRECTION OF THE MINUTES.**